No. 13-2091 (Consol. 13-2133, 13-2136, 13-2162)

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

KENT EUBANK, et al.,
Plaintiffs-Appellants,

v.

PELLA CORPORATION, an Iowa corporation, et al.,
Defendants-Appellees.

Appeal From The United States District Court
For The Northern District of Illinois, Eastern Division
No. 1:06-CV-4481
The Honorable Judge James B. Zagel

**RESPONSE OF APPELLANTS KENT EUBANK, THOMAS RIVA, AND WILLIAM AND NANCY EHORN TO PLAINTIFFS-APPELLEES' MOTION TO DISMISS THE APPEALS OF OBJECTORS FOR LACK OF STANDING**

David M. Oppenheim (counsel of record)
Brian J. Wanca
George K. Lang
Glenn L. Hara
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500
Facsimile: 847/368-1501

Saltzman and the other settlement-class representatives ("Saltzman") move to dismiss this appeal based solely on their contention that Appellants Kent Eubank, Thomas Riva, and William and Nancy Ehorn, who are certified class representatives, "lack standing." (Mot. Dismiss, Doc. 32, at 1–13.) The notion that named class representatives lack standing to appeal a class settlement in the case for which they were appointed should give this Court great pause. As discussed below, Saltzman's motion is not well founded. The Court should decide the propriety of the class-action settlement on the merits and not dismiss the appeal pursuant to this procedural tactic.

The underlying complaint alleged defects with Pella ProLine, Architect, and Designer Series windows—all three lines. Eubank, Riva, and the Ehorns were appointed, along with Saltzman, as representatives of the class. When Eubank, Riva, and the Ehorns learned of the general terms of the settlement, they refused to grant their approval, and that did not change when they learned the specifics of the settlement. Without the support of the other named class representatives, Saltzman and his son-in-law (lead class counsel, Paul Weiss) replaced the named class representatives with unvetted substitute class representatives to push the settlement through. The irony here is that the replacement "settlement-class representatives" have never been vetted by Pella or the district court to establish their own standing pursuant to Rule 23. Plaintiff-Appellants sought to depose them, even providing required topics of inquiry, but that request was never granted. (R. 4658.)

It is undisputed that Eubank and Riva own Pella ProLine windows and that their claims will be released under the settlement. Their standing is beyond question.

The Ehorns own a different line of Pella windows not covered by the settlement, but they remain duly appointed named-class representatives determined to challenge their attempted replacement to protect the absent class members, and to obtain an incentive award for themselves. Thus, the motion to dismiss should be denied in its entirety.

**I.     Eubank and Riva are unquestionably class members with standing to appeal the settlement.**

The district court certified a single settlement class consisting of "all persons in the United States who are current or former owners of Structures containing Pella ProLine® brand casement, awning, and/or transom windows (including 250 and 450 Series) manufactured by Pella Corporation between January 1, 1991 and December 31, 2006." (R. 4200.) Saltzman concedes that Eubank and Riva meet this definition: they own structures containing the subject ProLine windows. (Mot. Dismiss at 5–7.) The settlement purports to release their ProLine window claims against Pella. (A100, ¶ 50.6.) That should be enough to end the standing inquiry. An objecting class member—an objecting appointed class representative, no less—whose claims will be resolved by a class settlement has standing to appeal. *See, e.g.*, *Epenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 874 (7th Cir. 2012) (holding proposed class representatives who settled their claims individually and no longer had a "stake in any damages" could nevertheless appeal denial of class certification where they stood to obtain incentive award).

Nevertheless, Saltzman argues that Eubank and Riva lack standing on the grounds that (1) they will be "made whole" by the settlement and (2) they "are not Class Members" because they did not file claims with the settlement administrator. Neither argument withstands scrutiny.

### A. Eubank and Riva will not be "made whole" under the settlement.

Saltzman's paramount argument is that Eubank and Riva lack standing because they will be "made whole" by the settlement, meaning even if they prevailed at trial "they could not recover more than the Settlement provides." (Mot. Dismiss at 6.) That is plainly incorrect.

First, as a factual matter, there is absolutely no guarantee that any class member will be fully compensated by the settlement, let alone Eubank and Riva. The settlement contains per-window caps on every category of damages. (*See* Appellants' Br., Doc. 28, at 6.) Saltzman cannot walk away from the "up to" language he himself negotiated into the settlement. As presented to this Court, Eubank and Riva will be limited to the following caps on a *per window* basis:

| Subgroup | Discount | For un-reimbursed expenditures for windows, sashes, installation or finishing | For the cost of the window or sash | For the cost of installation/ finishing | For other damages to the structure |
|---|---|---|---|---|---|
| Subgroup (1) | 15% | | | | |
| Subgroup (2) | | Up to $175 per window or $100 per sash | | | |

3

| | | | | | |
|---|---|---|---|---|---|
| Subgroup (3) | | | Up to $60 per window or per sash | | |
| Subgroup (4) | 15% | | | | |
| Subgroup (5) | 10% | | | | |
| Subgroup (6) | | | Up to $100 per window or $60 per sash | Up to $250 per window or $120 per sash | Up to $100 per structure |
| Subgroup (7) | | | Up to a total of $100 per window or $60 per sash | | |
| Subgroup (8) | | | Up to $100 per window or $60 per sash | Up to $175 per window or $100 per sash | Up to $100 per structure |

(A108–10; A061–63.)

Despite Saltzman's conclusory assertion that Eubank and Riva will be made whole, Saltzman made no analysis as to which of the eight subgroups Eubank and Riva fall into. Saltzman made no analysis of the actual costs Eubank and Riva incurred juxtaposed with the caps applied to their respective unknown subgroups. Saltzman made no analysis of the set-off against those caps that Pella would be seeking pursuant to the defenses Pella maintained under the settlement, defenses that Pella has already asserted 28 times against Eubank and Riva. (R. 4635–40 (reasons to deny payment 11–33 asserted as to Eubank; reasons to deny payment 39–45 asserted as to Riva); R. 4841–51, R. 4857–60 (supporting reports authored by Pella).) It is pure fiction for Saltzman to represent that Eubank and Riva, or any class member for that matter, would be made whole pursuant to the settlement. Saltzman's analysis also overlooks that Eubank and/or Riva might fall into the Rule 23(b)(2) class of not-yet-

4

manifested or not-yet-replaced. No discussion of "made whole" in this case is complete without consideration of future manifest damage.

Considered from a different perspective, Saltzman's argument that Eubank is "made whole by the settlement" because he "could receive up to $6,000" is nonsense. (Mot. Dismiss at 7.) The record shows Eubank is claiming out-of-pocket losses of approximately $60,000 (SA025), which includes approximately $20,000 for Pella windows (R. 132, ¶ 28) and approximately $40,000 in damages to his structure caused by the windows. As Saltzman is well aware, the cap on the category of "other damages to the Structure" is $100 *per structure*, if and only if Eubank is lucky enough to fall within one of the only two subgroups eligible for that settlement benefit. (A108–10; A061–63.) $100 is not equal to or more than $40,000 under any known mathematical theory. That is hardly being "made whole."

And as indicated above, Saltzman's statement that Eubank and Riva will be made whole pursuant to the settlement is merely a questionable hypothetical. A hypothetical is not a guarantee. Eubank *could* get the $6,000 maximum from his arbitrator, but it's highly unlikely, considering the settlement allows Pella to retain all its causation-related defenses (which allowed it to achieve the 97% warranty-claim success rate that precipitated this lawsuit in the first place). (A054.)

Second, it is intellectually dishonest for Saltzman to argue that Eubank and Riva would fare better through the settlement than through trial. Since this is an issue-certified class, a recovery of 1¢ in settlement is more than the monetary amount one would get at trial. Saltzman's tortured logic shows he either doesn't understand

his own case or is hiding something. Either way, the argument is misapplied and a non-starter. The real impact of a trial award of a declaration that the windows were manufactured with a defect, however, has a significant non-monetary value.

Were Eubank and Riva to go to trial, the primary relief sought would be a classwide declaration that Pella ProLine windows "suffer from a single, inherent design defect leading to wood rot," coupled with a declaration that the warranty period has no time restriction. *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010). Obtaining such a declaration would expectedly reverse Pella's historic paltry warranty-payout rate from approximately 3% to something substantially higher. The payout rate could even approach 97%, since every window would have the presumption of a defect, thereby giving nearly every warranty claim value. Every warranty claim would be expected to result in some award, not subject to a cap, which would mean a greater recovery at trial, for Eubank, Riva, *and* the class. This also dispenses with the argument that Eubank would not be able to sue under Iowa's consumer-fraud statute. A class-action trial on the declarations would do away with the need for Eubank to sue individually in Iowa. Arguing that a subsequent trial would have to be an individual trial is simply a false assumption.

Eubank, Riva, and the Ehorns fought for the right to seek classwide relief before the district court, this Court, and the United States Supreme Court. And they won. A declaration on the defect issue would have real value, even though it would not automatically result in an award of money damages. As the Court explained in its prior opinion, establishing the defect would benefit both classes certified by the

district court. *Pella Corp.*, 606 F.3d at 395. For members of the Rule 23(b)(2) declaratory-judgment class, when combined with the other five declarations sought, a judgment on the defect issue would create "an entitlement to have their windows replaced" if they manifest the defect in the future. *Id.* The settlement does not do that. It creates, as Saltzman puts it, "an extension of the warranty . . . including the benefits of the PSEP." (Mot. Dismiss at 6.) The warranty and PSEP provide, under the best circumstances, a combination of discounts on replacement purchases and "labor and finishing costs" subject to the settlement created $100 deductible. (A127 ¶ 99.) The settlement does not provide the "specific performance" of future window replacement the Rule 23(b)(3) class could obtain at trial. *Pella Corp.*, 606 F.3d at 395.

For the Rule 23(b)(3) damages class, a declaration on the defect issue would "eliminate the need for multiple, potentially expensive expert testimony and proof that would cost considerably more to litigate than the claims would be worth to the plaintiffs." *Id.* at 394. The settlement does not provide this benefit. Far from it. Instead, the settlement kicks the can down the road on the defect issue, deciding it in neither party's favor, leaving the issue open for interpretation in binding, non-appealable arbitration. As Appellants argued in their opening brief, class members will probably not be able to prevail in arbitration without the "potentially expensive expert testimony and proof" that the defect-issue certification was supposed to avoid. (Doc. 28 at 29–30.)

Finally, the cases Saltzman relies on, *Mulhall v. Unite Here Local 355*, 618 F.3d 1279 (11th Cir. 2010), and *Microware Acquisition Corp. v. FCC*, 145 F.3d 1410 (D.C. Cir.

1998), are not Rule 23 cases. At minimum, Rule 23 cases should be considered in deciding whether to dismiss an appeal of a class-action settlement on standing grounds. Since Eubank and Riva claim the settlement recovery is illusory and too low, they create standing based on a financial basis. *See In re Aqua Dots Prods. Liability Litig.*, 654 F.3d 748, 750–51 (7th Cir. 2011).

In sum, the settlement does not provide everything Eubank and Riva could obtain at trial. Saltzman's argument that they lack standing because they will be "made whole" by the settlement fails on this point alone.

### B.     Eubank and Riva are members of the settlement class whether they filed claims or not.

Saltzman argues that Eubank and Riva "are not class members" because they did not submit claims to the settlement administrator seeking to share in the settlement they are challenging. (Mot. Dismiss at 11.) That is not how the settlement defines class membership, and it is not how Rule 23(b)(3) opt-out classes work.

As an initial matter, if Appellees *had* filed settlement claims, it is not hard to imagine that the Court would now be entertaining a motion to dismiss the appeal for lack of standing on the basis that Appellants are in favor of the settlement. Regardless of whether Appellants filed or did not file claims—a damned-if-you-do, damned-if-you-don't quandary— the real issue is whether notice should have been sent and the claims period triggered, a decision made independent of appellate standing. Once the district court issued notice, over Appellants' objections, it triggered the claims period, which created the make-a-claim or not-make-a-claim quandary. Saltzman's focus on

8

whether a claim was made or not as the basis for standing reflects his failure to see the bigger picture—there is no clear rule for what an objector is or is not supposed to do regarding submitting a claim pursuant to a distinct claim period that will expire before the objector's appeal is heard.

Addressing Saltzman's argument, the settlement class is defined as "all persons in the United States who are current or former owners of Structures containing" the relevant ProLine windows. (A089; R. 4200.) Eubank and Riva meet this definition, as Saltzman concedes. (Mot. Dismiss at 5–7.) There was no requirement in the class definition that a person file a claim with the settlement administrator to be a class member (it is not, for example, an opt-in class or a "collective action" of some kind). (A089; R. 4200.) This is typical in a Rule 23(b)(3) class action. A member of a certified (b)(3) class is part of the class unless he or she opts out. What Saltzman is describing is much closer to an opt-in class.

The other cases Saltzman relies on are easily distinguished. In *Braud v. Transp. Serv. Co. of Ill.*, No. 05-1898, 2010 WL 3283398, at *5–6 (E.D. La. Aug. 17, 2010), the objectors missed the deadline for objections and then failed to produce any evidence that they met the class definition, which required them to live within a particular "geographical boundary" affected by a chemical spill. Here, Eubank and Riva timely objected, and it is undisputed that they meet the class definition. There is some peculiar language in *Braud* that can be read literally as saying that a member of a Rule 23(b)(3) settlement class effectively opts out of the class by not filing a claim. To that extent, *Braud* is simply wrong.

The court in *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92, 2011 WL 3792825, at *1 (S.D.N.Y. Aug. 25, 2011), did not hold that the objector was not a class member *because* he did not file a claim. It merely held that he had failed to establish that he met the class definition, and that *one of the opportunities* he missed to do that would have been to file a timely claim.[1] Similarly, the court in *Feder v. Elec. Data Sys. Corp.*, 248 F. App'x 579, 581 (5th Cir. 2007), held the objector failed to establish he met the class definition. It did not hold he was not a class member *because* he did not file a claim. Here, there is no dispute that Eubank and Riva meet the class definition, and these cases are irrelevant.

**II.     The Ehorns have standing to challenge class counsels' attempt to replace them as class representatives and to pursue incentive awards.**

This operative complaint alleges similar defects across three lines of Pella windows (Architect, Designer, and ProLine) owned by the named Plaintiffs, including the Ehorns (who owned Architect windows). (R. 135–36.) On June 4, 2009, the district court granted Plaintiffs' motion for class certification (R. 1177), seeking appointment of the named Plaintiffs, including the Ehorns, as class representatives. (R. 2940). Contrary to Saltzman's assertion that the Ehorns were class representatives only "for owners of the series they did own" (Mot. Dismiss at 3, n.2), neither the motion for class certification nor the district court's order drew any distinction between class representatives based on what line of windows they owned.

---

[1] Counsel was unable to retrieve the unreported slip opinion in "*In re Air Cargo Shipping*" that Saltzman cites on Westlaw or PACER. Saltzman did not attach a copy to his motion. The Court should therefore disregard the citation.

Following their appointment, the Ehorns diligently carried out their duties as class representatives, monitoring the litigation and class counsel, sitting for a deposition, and consulting on the direction of the case. (*See* A027–28; R. 1440.) Undersigned counsel testified below that the class representatives, *especially* the Ehorns, took their duties very seriously. (SA030.) When they rejected the settlement as "a bad deal for the class" (A252), class counsel attempted to replace them with replacement representatives who would approve it. The Ehorns submit that their desire to challenge class counsels' plan is sufficient to give them standing to appeal.

In addition, this Court recently held that the prospect of an incentive award is sufficient to confer appellate standing on class representatives, even if they previously settled their individual claims for damages. *Epenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 874 (7th Cir. 2012). Here, the settlement agreement provides for incentive awards of $5,000 to $10,000 to be paid only to the current settlement-class representatives. (A128, ¶ 101.) There is no provision for Eubank, Riva, or the Ehorns. (A128, ¶ 101.) Class counsel promised to pay incentive awards to Appellants in the proceedings below, but the Ehorns do not trust class counsel to pay it to them (nor do Eubanks and Riva). They contend this is an independent basis for the Ehorns' standing on appeal.

Finally, once again, the irony of Saltzman's position must be pointed out. The Ehorns, along with Eubank and Riva, argue on appeal that one of the problems with the settlement is it required separate representation for the multiple subgroups involved. (Appellants' Br., Doc. 28, at 36.) Saltzman argued against that proposition

11

at the district court (R. 5107–10) and now before this Court (Doc. 35 at 25–28). Yet Saltzman, in his attempt to defeat the appeal, now switches positions and argues that the Ehorns lack standing because they are not part of the right subgroup (ProLine).

### III. The $11-million attorney fee is not immune from scrutiny merely because it was structured as a direct payment from Pella to class counsel.

Saltzman argues that no class member has standing to object to the $11-million attorney fee Pella has agreed to pay his son-in-law under the settlement because it is structured as a direct payment from Pella (rather than as a percentage of a common fund). (Mot. Dismiss at 12.) First, Eubank, Riva, and the Ehorns are not challenging the amount of the fee *per se*. (*E.g.*, Appellants' Br., Doc. 28, at 31.) A significantly *higher* fee might be appropriate for an adequate resolution of this case. Rather, Eubank, Riva, and the Ehorns object to the settlement viewed as a whole, and argue that the fee raises a "red flag" in light of Pella's valuation of the settlement at as low as $17 million (meaning Pella agreed to a 64% attorney fee). (*Id.*) To the extent Appellants' objection to the overall settlement is a "challenge" to the fee award, as Saltzman puts it (Mot. Dismiss at 12), Appellants have standing to challenge it for the reasons set forth in Section I, above.

Second, although Eubank, Riva, and the Ehorns are not directly challenging the attorney fee, they would like to address Saltzman's argument, as it could affect future class-action cases in this circuit. Saltzman is essentially arguing that *no one* has standing to challenge a class-action attorney fee as long as it is structured as a direct payment from the defendant to class counsel. But the economic reality is that the fee

12

amount is baked into the overall settlement amount the defendant is willing to pay to settle the litigation. It would be naïve to pretend otherwise. Accepting Saltzman's argument would allow parties in this circuit to structure class-action settlements in such a way that questionable fee agreements would escape scrutiny.

The cases Saltzman relies on are easily distinguishable. In two cases, the class member whose appeal was dismissed objected *solely* to the attorney fee award, and not to the amount of the common fund from which it would be paid. *See Silverman v. Motorola Solutions, Inc.*, No. 12-2339, --- F. App'x ---, 2013 WL 4082893, at *1 (7th Cir. Aug. 14, 2013) (observing that "[n]one of the class members" challenged amount of class settlement but two objected to the 27.5% attorney fee); *Knisley v. Network Assoc., Inc.*, 312 F.3d 1123, 1126–28 (9th Cir. 2002) (class member appealed "only the fee award"). Since the class members in these cases had not claimed a share of the common fund, they had no interest in the amount of the fee, either. *See Silverman*, 2013 WL 4082893, at *1; *Knisley*, 312 F.3d at 1128. This appeal presents a different situation. Eubank, Riva, and the Ehorns argue that the settlement itself is inadequate and point to the comparatively large attorney fee (including a $2-million "kickforward") as a "warning sign" of collusion or unfairness. *Plus*, other appellants are challenging the attorney fee itself. (*See* Pickering Br., Doc. 21, at 14–18.)

Saltzman's third case, *Wachovia Sec., LLC v. Loop Corp.*, No. 11-3860, --- F. App'x ---, 2013 WL 4017403, at *7 (7th Cir. Aug. 8, 2013), is not even a class action. The Court merely held that a corporation found to be the alter-ego of a second corporation for purposes of piercing the corporate veil did not necessarily have

13

standing to object to a fee-shifting sanction against the second corporation. *Id.* It is irrelevant here.

## **CONCLUSION**

It is convenient that Saltzman and his son-in-law have determined that everyone challenging their settlement lacks standing on appeal. But their arguments for dismissal fall apart under examination. Appointed class representatives who are later replaced by unvetted settlement representatives should have more standing than anyone else to challenge the settlement they rejected, which lead to their being cast aside. Otherwise, what is the future purpose of Rule 23(a)(4)? The Ehorns, as well as Eubank and Riva, also have standing to seek their incentive awards. *Epenscheid*, 688 F.3d at 874. Saltzman's argument that Eubank and Riva lack standing because they would be made whole under the settlement is based on cases that do not address Rule 23 and on incorrect factual assumptions.

Appellants Eubank and Riva, as owners of ProLine windows covered by the settlement, unquestionably have standing to pursue this appeal. The Ehorns have standing as well, given their challenge to their replacement and their financial interest in an incentive award. In the alternative, even if the Court chooses to dismiss the Ehorns' appeal, it should proceed to decide Eubank's and Riva's challenge to the class-action settlement on the merits.

>Respectfully submitted,
>
>Kent Eubank, Thomas Riva, and William and Nancy Ehorn,
>
>By:     s/David M. Oppenheim
>David M. Oppenheim (counsel of record)
>Brian J. Wanca
>George K. Lang
>Glenn L. Hara
>ANDERSON + WANCA
>3701 Algonquin Road, Suite 760
>Rolling Meadows, IL 60008
>Telephone: 847/368-1500
>Facsimile: 847/368-1501

☑

## CERTIFICATE OF SERVICE
**Certificate of Service When All Case Participants Are CM/ECF Participants**

I hereby certify that on  September 13, 2013 , I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ David M. Oppenheim

☐

## CERTIFICATE OF SERVICE
**Certificate of Service When Not All Case Participants Are CM/ECF Participants**

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

counsel / party:                                address:

s/_____

16