NOS. 13-2133, 13-2202
CONSOLIDATED WITH 13-2091 (L), 13-2162

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

DR. LEONARD E. SALTZMAN, *et al.,*
*Plaintiffs-Appellees,*

v.

PELLA CORPORATION, *an Iowa corporation, et al.*
*Defendants-Appellees,*

Appeal of MICHAEL J. SCHULZ,
*Objecting Class Member.*

On Appeal from the United States District Court
for the Northern District of Illinois, No. 1:06-cv-04481

Reply Brief
of Appellant Michael J. Schulz

Christopher A. Bandas
BANDAS LAW FIRM, P.C.
500 North Shoreline, Suite 1020
Corpus Christi, Texas  78401
Telephone:  361/698-5200
Facsimile:  361/698-2222
*Attorneys for Appellant Michael J. Schulz*

# Table of Contents

Table of Contents ............................................................................................. i

Table of Authorities ....................................................................................... iii

Introduction ...................................................................................................... 1

Argument ........................................................................................................... 3

I.      Neither Pella nor Saltzman address the requirement that class counsel's fees be
        proportional to the class's recovery—and the fees here are not .......................... 3

      A.      The district court's valuation of the settlement is based on a legally
        erroneous methodology and is thus clearly erroneous. .............................. 5

      B.      The value furnished through a warranty program that already exists is
        not a settlement benefit to the class. ............................................................. 6

      C.      Appellees fail to defend the district court's failure to consider  the actual
        value of benefits received. ............................................................................. 8

      D.      The limited relief that the settlement affords the class demonstrates that
        the fee award is unreasonable. .................................................................... 13

      E.      Saltzman's cites to defend the fee are outdated and inapposite. ............. 15

II.     The district court committed reversible legal error by failing to recognize the
        *Bluetooth* signs of self-dealing .................................................................... 18

III.    Rule 23(a)(4) and Rule 23(g) were not met, requiring class decertification. ...... 20

      A.      The proposal to pay Saltzman and the new class representatives, but not
        the objecting class representatives, demonstrates a conflict. ................... 21

      B.      There is a conflict between Saltzman's interests and the interests of the
        class. ............................................................................................................... 22

      C.      Just as Saltzman is an inadequate representative, his son-in-law is
        inadequate to serve as counsel. .................................................................. 24

IV.     Appellees waive response to the reversible error of failing to give reasons for
        rejecting objections. ............................................................................................. 25

V.      Schulz has standing ............................................................................................... 25

Conclusion ........................................................................................................ 26

Certificate of Compliance with Fed. R. App. 32(a)(7)(c) ................................. 27

Proof of Service ...................................................................................................... 28

# Table of Authorities

<u>Cases</u>

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................ 21, 35

*In re Aqua Dots Prod. Liab. Litig.*,
    654 F.3d 748 (7th Cir. 2011) ................................................................ 3-5

*In re Baby Products Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ..................................... 1-2, 9, 12-13, 15-17

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .............................1-2, 9, 12, 15-16, 18-20

*Boeing Co. v. Van Gemert*.
    444 U.S. 472 (1980) ........................................................................... 9-12

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ............................................................................8

*Devlin v. Scardelletti*,
    536 U.S. 1 (2002) .................................................................................. 36

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ................................................................ 25

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ...............................1-2, 4-5, 7, 9, 11, 15-16

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ......................................................... 15-16, 36

*Greisz v. Household Bank (Illinois), NA*,
    176 F. 3d 1012 (7th Cir. 1999) ............................................................. 23

*In re High Sulfur Content Gas. Prod. Liab. Litig.*,
    517 F.3d 220 (5th Cir. 2008) ................................................................ 24

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) .............................................................. 14

*Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
  280 F.R.D. 364 (N.D. Ill. 2011)................................................................ 17

*London v. Wal-Mart, Inc.*,
  340 F.3d 1246 (11th Cir. 2003)................................................................ 23

*McKinnie v. JP Morgan Chase Bank, N.A.*,
  678 F. Supp. 2d 806 (E.D. Wisc. 2009) .................................................. 17

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) .................................................................... 17

*In re Mexico Money Transfer Litig.*,
  267 F.3d 743 (7th Cir. 2001) .....................................................................6

*Mirfasihi v. Fleet Mortgage Corp.*,
  356 F.3d 781 (7th Cir. 2004) .................................................................... 19

*In re Prudential Ins. Co. America Sales Practices Litig.*,
  148 F.3d 283 (3rd Cir. 1998) .............................................................. 5, 10

*Radcliffe v. Experian Info. Solutions*,
  715 F.3d 1157 (9th Cir. 2013)................................................................. 23

*Randall v. Rolls-Royce Corp.*,
  637 F.3d 818 (7th Cir. 2011) .................................................................. 21

*Reynolds v. Beneficial Nat. Bank*,
  288 F.3d 277 (7th Cir. 2002) ................................................................. 3-5

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) .............................................................. 36

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................. 19

*Steering Committee v. Exxon Mobil Corp.*,
  461 F.3d 598 (5th Cir. 2006) .....................................................................8

*Strong v. Bellsouth Tel. Inc.*,
  137 F.3d 844 (5th Cir. 1998) .................................................................. 12

*Susman v. Lincoln American Corp.*,
  561 F. 2d 86 (7th Cir. 1977) ................................................................... 23

*Synfuel Technologies v. DHL Express (USA)*,
  463 F.3d 646 (7th Cir. 2006) ...................................................................6

*Taubenfeld v. Aon Corp.*,
  415 F.3d 597 (7th Cir. 2005) ................................................................. 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...............................................................10-11

*Weinberger v. Great Northern Nekoosa Corp.*,
  925 F. 2d 518 (1st Cir. 1991) ................................................................ 19

*Williams v. MGM-Pathe Communications Co.*,
  129 F.3d 1026 (9th Cir. 1997) ............................................................... 16

Rules and Statutes

7th Cir. R. 36 ......................................................................................... 26

15 U.S.C. § 77z-1(a)(6) ......................................................................... 10

15 U.S.C. § 78u-4(a)(6) ......................................................................... 10

28 U.S.C. § 1711 note §2(a)(3) ............................................................. 11

28 U.S.C. § 1712 .................................................................................... 11

28 U.S.C. § 1712(c) ............................................................................... 14

28 U.S.C. § 1713 .................................................................................... 11

Fed. R. App. Proc. 32............................................................................. 25

Fed. R. Civ. Proc. 23(a)(4) ...............................................................3, 20-21

Fed. R. Civ. Proc. 23(e)....................................................................11-12, 16

Fed. R. Civ. Proc. 23(g).....................................................................20, 24

Fed. R. Civ. Proc. 23(h) .................................................................... 10, 12, 16, 24


Other Authorities

AMERICAN LAW INSTITUTE,
    PRINCIPLES OF THE LAW OF AGGREGATE LITIG. §3.13 (2010) .......................... 10

Federal Judicial Center,
    *Manual for Complex Litigation (Fourth)* § 21.71 (2004) ............................................ 10

Notes of Advisory Committee on 2003 Amendments to Rule 23 ............................ 3, 10

## Introduction

The appellees simply sidestep Schulz's argument against settlement fairness. As cases cited in Schulz's opening brief such as *Dry Max Pampers* and *Bluetooth* show, it is not enough to argue that the class was paid "enough." Settlement fairness does not depend solely on the transfer between the defendants and the class, but also on the *allocation* of that transfer between class counsel and the class—a legal truism this Court has repeatedly recognized in commenting on the inherent conflict of interest between class counsel and their clients and the obligations of a district court to protect absent class members against predatory class counsel. Perhaps the parties can show that a single peppercorn would be a "fair" distribution to the class. But if the defendant pays class counsel $11 million and the class a single peppercorn, it matters not that the peppercorn would be fair in the abstract—class counsel cannot self-deal to capture the vast majority of settlement benefits for itself.

And that is what happened here. The district court rationalized the settlement value by looking at the hypothetical total payments that would be made to class members, but that is a twofold error. *First*, the correct metric, as this Court has repeatedly held, is the *incremental* settlement benefit above and beyond what class members would have received in the absence of litigation. *Second*, the correct metric for evaluating fairness is the *actual value* received by class members.

*In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013), is directly on point. There, plaintiffs negotiated an antitrust settlement fund with a hypothetical

payout of $35.5 million, of which class counsel claimed $14 million for itself. But the claims process was so burdensome, that the class actually only received less than $3 million. *Id.* at 169. Even though the remaining $18 million of the claim fund would go to *cy pres* instead of reverting to the defendants, and even though the appellants did not challenge the fairness of the size of the settlement, the Third Circuit held that the district court erred in approving the settlement without considering the *actual* direct benefits received by the class. *Id.* at 175-76. Here, the parties have not even established the fig leaf of *cy pres*; when Pella refuses to pay in response to a twelve-page claim-form filed under the settlement (and when a class member throws up his hands rather than filling out that twelve-page claim form), Pella will keep the money. Right now, the best evidence is that Pella will pay less than $2 million to class members in incremental benefit. The district court failed to consider the actual direct benefit to class members, and that failure is reversible legal error.

To top it all off, the district court entirely ignored the indicia of self-dealing by class counsel: the "clear sailing" and "kicker" provisions of the settlement. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947-48 (finding reversible error because, inter alia, district court "ignored the clear sailing provision").

Yet the appellees never cite *Baby Products*, much less distinguish it; they never refer to the relevant holdings of *Dry Max Pampers*, much less distinguish them; they never cite *Bluetooth*, much less distinguish it. They have waived any argument that the district court committed reversible error; remand is required for the correct findings.

But this Court can go farther and reverse. Rule 23(a)(4) adequacy is not met when the tail wags the dog and class counsel picks class representatives **after** the case has settled and based on whether they support a settlement that pays class counsel $11 million up front and the class less than $2 million of incremental benefit over several years. Class counsel justifies the use of his father-in-law as class representative by pointing to an Illinois state court that signed off on a similarly corrupt arrangement. Of course, such Illinois state-court shenanigans are exactly why Congress passed the Class Action Fairness Act to move national class actions into federal court and better protect absent class members from abusive settlements. The class must be decertified.

## Argument

## I.     Neither Pella nor Saltzman address the requirement that class counsel's fees be proportional to the class's recovery—and the fees here are not.

The "fundamental focus" in evaluating a fee is not the potential universe of recoveries for all potential claimants; it "is the result actually achieved for class members[.]" Notes of Advisory Cmte. on 2003 Ams. to Fed. R. Civ. P. 23. How much the settlement benefits the class depends on what the defendant was already providing the class—the benefits must be measured at the "*incremental*" margin, not at a zero baseline. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002) (emphasis added); *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011); Schulz Br. 23-24.

For instance, if in the hypothetical case *Coyote v. Acme*, Acme was already paying class members $50 refunds for every defective jetpack, and class counsel negotiated a class-action settlement that required Acme to pay class members $60 for every defective jetpack, the settlement benefit would be $10, not $60, because the settlement improved the class's position by only $10 per jetpack.

Pella's own brief demonstrates the error in spades. As Pella concedes, "**Prior to this litigation**, Pella voluntarily created the ProLine Service Enhancement Program ('PSEP')." Pella Br. 5 (emphasis added). Yet Pella's chart of settlement benefits shows that all the settlement provides for the vast majority of class subcategories is the same benefits that were already available under the PSEP: in some cases, augmented by $100 or a coupon; in some cases, $100 less. Pella Br. 10-12. Yet the district court and the settling parties repeatedly include the pre-existing PSEP benefit in their calculation of the "settlement" benefit. This makes sense in comparing the value of the settlement to the value of litigation; but it is inappropriate in comparing the value of the settlement to the value of the attorneys' fees. *Aqua Dots*, 654 F.3d at 752 (class counsel that merely negotiates for the class what the class has already received has accomplished nothing); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 719 (6th Cir. 2013) (discounting value of refund program that existed pre-settlement).

Saltzman and Pella do not contest this; indeed, they never mention the word "incremental" in their briefs. Neither cites or tries to distinguish *Aqua Dots*. Neither

cites or tries to distinguish *Dry Max Pampers* for the relevant holding.[1] (While both briefs cite to *Reynolds* repeatedly, it is only for the proposition that the judge should calculate litigation value; they both ignore the issue of the baseline settlement benefit.) Yet plaintiffs are seeking credit for the entire "value" they claim to have conferred, without regard to what was already available to the class before they claimed their $11 million fee. Given that "numerous courts have concluded that the amount of the benefit conferred logically is the appropriate benchmark against which a reasonable … fee charge should be assessed," *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 338 (3d Cir. 1998), that avoidance is reversible error.

**A.     The district court's valuation of the settlement is based on a legally erroneous methodology and is thus clearly erroneous.**

As Schulz pointed out, the district court's valuation of the settlement is based on the amount that the class will receive if every claimant makes a claim and every claim is granted the maximum potential recovery. Schulz Br. 24-25. Rather than explain that logic, Pella and Saltzman simply repeat their assertions as to the potential recovery to the class. Pella Br. 22-23; Saltzman Br. 16. But not every claim will be made, and not every claim will result in the maximum recovery. Indeed, some claimants in the abbreviated claims process are limited to discounts on future Pella products. A12, A108-109, A127.

---

[1] Saltzman cites *Dry Max Pampers* only to distinguish its discussion of class representative incentive payments. Saltzman Br. 36 n.20.

Not only does the settlement make it difficult to recover cash, the discounts described in the settlement, like other in-kind compensation, are "'worth less than cash of the same nominal value,' since, as is typical with coupons, some percentage of the [discounts] claimed by class members will never be used." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006), quoting *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001). This is not only due to forgetfulness or lack of need; using in-kind compensation like Pella's discount "'require[s] the claimant to return to [Pella] to do business with [it],' something at least some class members likely would prefer not to do." *Id.*

**B.     The value furnished through a warranty program that already exists is not a settlement benefit to the class.**

Both Pella and Saltzman claim that Schulz "misunderstands" the benefits of the settlement because Pella has made its extended-warranty program contractual. Saltzman Br. 18; Pella Br. 28. This concedes Schulz's point: Pella already had a beneficial extended-warranty program in place. And, indeed, Pella and Saltzman concede that the settlement does not change what a consumer gets through the program. Pella Br. 10-12. The only changes are that the warranty benefits now flow directly to the consumer rather than to a distributor intermediary and that Pella cannot (for class members, at least) end the program—though the parties provide no evidence that Pella would have ended PSEP. There is no comparison of the value of those changes to the value of the pre-settlement warranty program. Is there some value to preventing Pella from cancelling the program? Perhaps, upon a showing

absent in the record that Pella was considering doing so—but that value doesn't equal the entire value of the program if Pella was not going to do so today. The basic marginal benefit of that prevention is the time-discounted value of the probability that Pella would cancel or reduce benefits under the program. The benefit of making the consumer the direct beneficiary must be measured the same way.

But Saltzman and Pella instead measure the value of the warranty program based on the "potential recovery" that the class might realize from claims made under it—that is, they base the value on what a class member could get under the program. Saltzman Br. 18-19, 40-43; Pella Br. 7, 23, 28; Pella Supp. Appx. 26 at ¶ 28. Those benefits were available to the class members even if this settlement had never been approved. There is of course a chance that Pella would, absent this settlement, have canceled the program, but neither Saltzman or Pella furnish that probability. There might be some unrevealed benefit to changing the consumer from an indirect beneficiary to a direct one, but Saltzman or Pella never describe it, much less quantify it. The only evidence, then, is that the marginal benefit to the class of including the PSEP in the settlement is … nothing.

A settlement term that does not make the class better off than it was before the settlement confers no benefit upon the class. *See Dry Max Pampers*, 724 F.3d at 719. Fees to counsel in class actions must be based off of the benefit conferred upon the class by counsel's representation. Thus, the PSEP settlement term, which creates no new value for the class, cannot support an award of fees to class counsel. The district court's valuation of that term as anything other than zero is clearly erroneous;

approving a settlement based upon that clearly erroneous valuation is an abuse of discretion. The Court should reverse.

## C.  Appellees fail to defend the district court's failure to consider the actual value of benefits received.

The claims process was sufficiently burdensome that very few class members have submitted claims. Indeed, Pella has now reduced its estimate of class benefit to $22.5 million at most. Pella Br. 22-23. But even that figure is a wild exaggeration. Pella's claim that it may pay out "potentially" $22.5 million falsely assumes (1) every one of the 10,706 claims will pay out $750; (2) every one of the 1,484 arbitrations will pay $6,000; and (3) Pella was offering zero benefit pre-settlement.

We know to a certainty that the first two assumptions are not true. Pella wrote into the Settlement substantial protections against ever having to pay a claim it did not want to pay: a twelve-page claim form with many disqualifying hoops for claimants to jump, and the right for Pella to raise affirmative defenses and contest causation. Schulz Br. 5-6. Why would Pella complicate negotiations so if it was simply going to issue checks for the maximum settlement amount in response to any claim?[2] The answer is obvious: the settlement relief is largely illusory. The appellees have in their possession, but have refused to disclose, what the actual claims payment rate will be

---

[2] Indeed, it's hard to imagine how this class certification satisfies the superiority and predominance requirements when under the settlement relief class members have to relitigate almost every element of their damages claim. *Cf. Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013); *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 604-05 (5th Cir. 2006).

per claim on average. The district court committed error in failing to request it. *Baby Products,* 708 F.3d at 171, 174-76; *Dry Max Pampers*, 724 F.3d at 718-19 (burden on settling parties to produce information in their possession about payment on claims). An adverse inference should be drawn.

The Settlement expressly ties future claims to what was offered by the pre-existing warranty program (so the "$5.5 million" described in Pella's brief is really zero incremental benefit). The class benefit is plainly worth less than $22.5 million; it is likely closer to and even less than $2 million once PSEP benefits are subtracted. Meanwhile, class counsel collected $11 million, a multiple of their lodestar for such scanty incremental relief.

Note that this is not an argument the litigation value of the case was more than this $13-million incremental benefit. Schulz is not arguing that this case must have settled for $300-million incremental benefit or $130-million incremental benefit or even $20-million incremental benefit instead of $13-million. But once the parties agree to settle for $13 million incremental benefit, it is inherently unfair for class counsel to receive such a disproportionate share of that amount. *Dry Max Pampers,* 724 F.3d at 721; *Bluetooth*, 654 F.3d at 947-49. Perhaps $13 million is more than the litigation value of the case, but once that amount is on the table, class counsel has a fiduciary obligation to divvy it up fairly, or the settlement is unfair.

Saltzman attempts to defend this unjust result by citing *Boeing Co. v. Van Gemert*. 444 U.S. 472 (1980). This does not help Saltzman, because *Boeing* has been superseded

by subsequent law; and even if it were still good law, it is inapposite for three independent reasons.

The 2003 amendments to the Federal Rules that created Rule 23(h), and the 2005 passage of the Class Action Fairness Act supersede *Boeing*. The amendments reflect common-sense intuitions: attorneys' fees should be tied directly to what clients receive, and permitting a class member to fill out a claim form in order to receive a check simply is not equivalent to sending that class member a check directly. It is therefore not appropriate to award fees based on a speculative, maximized estimate of potential claims. *See* Notes of Advisory Committee on 2003 Amendments to Rule 23 ("fundamental focus is the result *actually achieved* for class members" (emphasis added); *id.* ("it may be appropriate to defer some portion of the fee award until *actual payouts* to class members are known" (emphasis added)); *id.* (*citing* 15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6) (fee award should not exceed a "reasonable percentage of the amount of any damages and prejudgment interest *actually paid* to the class" (emphasis added))). *See also* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.13 (2010); Federal Judicial Center, *Manual for Complex Litigation (Fourth)* § 21.71(2004) ("the fee awards should be based only on the benefits *actually delivered*."). "[N]umerous courts have concluded that the amount of the benefit conferred logically is the appropriate benchmark against which a reasonable common fund fee charge should be assessed." *Prudential,* 148 F.3d at 338. In short, class counsel is entitled to request a share of the benefits it *actually provides* the class. This is the best way to "directly align[] the interests of the class and its counsel." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121

(2d Cir. 2005). And the Class Action Fairness Act made clear that Congress condemned settlements where the actual relief was illusory, even if the hypothetical relief was huge. 28 U.S.C. §1711, note §2(a)(3)(A); 28 U.S.C. §§1712-1713. It is absurd to say that if the actual value to the class is negative, 28 U.S.C. §1713 overrides *Boeing*, but as soon as the actual value to the class reaches one penny, *Boeing* requires a fictional valuation of settlement value to include all hypothetical benefit. As *Dry Max Pampers* notes, "Cases are better decided on reality than on fiction."

    *Second*, Boeing is inapposite for three separate reasons:

- (1) *Boeing* held it appropriate to award a fee based not on the "potential value" of the settlement, but on the *actual value* of an *actual fund* from which any class member—any holder of a particular series of debenture bonds issued by Boeing—could claim. On the contrary, Pella's payments are not guaranteed, and could in fact be zero, and claimants cannot recover cash until they go through a lengthy claims process that involves defeating Pella's reserved defenses. This is not the "right to share the harvest of the lawsuit" dependent only upon proving "membership in the injured class" of which *Boeing* spoke.

- (2) *Boeing* did not involve a Rule 23(e) fairness inquiry; it involved a class action judgment, not a settlement. *Boeing* is not a case where class counsel negotiated a settlement with a claims-made procedure that deliberately limited the ability of class members to obtain money. Thus, even if *Boeing* permitted such a disproportionate fee notwithstanding the creation of

Rule 23(h), it does not consider or speak about the Rule 23(e) fairness of a settlement where class members have objected to the claims process. Again, *Baby Products* is directly on point: the *actual value* received by class members must be considered when evaluating the fairness of the settlement, even if the hypothetical maximum value of the settlement to the class is unimpeachable, and even if the attorneys' fee is below lodestar. 708 F.3d at 177-78.

- (3) *Boeing* applies only to cases with a common fund, not to a settlement like the one here, where the attorneys' fees are paid separately from the class recovery. *Strong v. Bellsouth Tel. Inc.*, 137 F.3d 844 (5th Cir. 1998), is directly on point. *Strong* noted that *Boeing* relied on common-fund theory, and spoke to the question of whether class counsel or the defendant had first claim on the common fund. *Id.* at 851-52. Thus, when the parties negotiate a settlement without a common fund, but one where the class counsel is to be paid separately, *Boeing* does not apply. *Id.* Similarly, class counsel did not create a common fund in this case. Instead, they structured the settlement in a self-serving manner to protect their fee request. *Bluetooth*, 654 F.3d at 947 (9th Cir. 2011) (when class counsel "arrange for fees not awarded to revert to defendants rather than be added to the class fund," it is a "sign[] that class counsel have allowed pursuit of their own self-interests... to infect the negotiations"). That self-serving decision has consequences in evaluating the settlement.

The appellees do not dispute that *Baby Products* applies and that the district court failed to consider the actual claims rate. This requires reversal, both as a matter of law and of sound public policy.

## D.     The limited relief that the settlement affords the class demonstrates that the fee award is unreasonable.

Appellees justify the $11-million payment to class counsel by pointing to the pointlessness of a trial: A trial on defectiveness, the only issue certified for class-wide relief, would have resulted in zero damages. Saltzman Br. 17; Pella Br. 18 ("If Plaintiffs prevailed at the class trial and established the existence of a design defect, each individual owner then would have to pursue a claim for damages…."). Pella and Saltzman both cite the difficulty of proving causation and overcoming Pella's defenses as factors supporting the settlement. But the settlement does nothing to fix that. The settlement requires participants in the arbitration-claims process to do just that—no arbitral claimant can recover without proving causation and overcoming Pella's affirmative defenses. A104-06; A124-26. And Pella can still challenge abbreviated-claim applications by demanding evidence of causation and absence of comparative fault. A105. And neither Pella nor Saltzman contest that this claims process is cumbersome, making even getting to that point a chore.[3] Schulz Br. 5-6.

---

[3] Saltzman argues that "there are a wide variety of reasons why class members do not file claims for funds to which they are otherwise entitled." Saltzman Br. 17. But that's a reason to discount the value of a claims-made settlement, rather than reward class counsel that negotiates a settlement where it knows class members won't get actual relief.

In exchange for surrendering none of its defenses, Pella gains a limitation on damages: The recoveries in both processes are capped. Abbreviated-claims claimants can receive no more than $750; arbitration-claims claimants can receive no more than $6,000. A103; A107; A119.  In both scenarios, there is the possibility of zero recovery at the end of the claims process—the same possibility of a zero recovery that there is in any trial and that Pella and Saltzman claim favors a settlement. And much of the relief that can be won through either process is illusory (the pre-existing warranty program) or equivalent to a coupon (discounts on future purchases of Pella products).[4] It's one thing to say that relief is small because it would be difficult to prove causation at trial; but agreeing to cap relief at a low level while still forcing class members to prove causation is double-counting this disadvantage in Pella's favor. Perhaps this would be acceptable if class counsel was sharing the pain. But the settlement acts if class counsel won the case and is to be rewarded a multiple of its lodestar, the vast majority of settlement relief, and even receive cash before the class does.

In sum, Pella is required to pay nearly nothing it was not already paying and the class receives almost nothing it was not already entitled to pre-settlement. What the class does receive is subject to Pella's challenge later, and even those who overcome Pella's challenges might get nothing but a coupon. Pella, on the other hand:

---

[4] The district court also failed to comply with 28 U.S.C. §1712(c)'s requirement that coupon relief be valued at the redemption rate. *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013).

- is exonerated from future lawsuits (A132-33);

- surrenders no defenses (A125);

- retains the right to challenge claims filed under either claims process (A104-05; A124-26);

- continues a warranty program it gave no indication that it was thinking of cancelling (A86, A116-118, A127);

- blunts the chance of claims by imposing a twelve-page questionnaire requirement on every potential claimant (A145-59; A161-74); and

- caps its potential liability to every potential claimant (A103; A107; A119).

For this, class counsel claims entitlement to $11,000,000. That cannot be the case without a demonstration that the class is getting incremental benefits proportional to that award, a demonstration that the parties failed to make below, and the district court failed to demand.

## E.    Saltzman's cites to defend the fee are outdated and inapposite.

Saltzman ignores the cases Schulz cites, but throws earlier precedents at this Court to justify its fee. Obviously, cases that predate *Bluetooth*, *Baby Products*, and *Dry Max Pampers* have no explanation for why those decisions are not correct. But even the older cases Saltzman cites are not persuasive or applicable.

Saltzman relies on *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995). But that case supports Schulz, and demonstrates that the fee award here is unfair and unreasonable. Saltzman and Pella lean heavily on the argument that Pella has agreed to make its extended-warranty program contractual

rather than voluntary, but Pella acknowledges that it thinks the warranty will rarely be employed. Especially when combined with the discounts that most class members will receive, the weighting toward "non-cash relief, which is recognized as a prime indicator of suspect settlements," ought to bolster the Court's "sense that the class's interests were not adequately vindicated." *Id.* at 803. Too, Saltzman and Pella attempt to defend the fee as being free from self-dealing because the fee wasn't negotiated until the parties had reached an agreement in principal on the operative terms of the settlement. But "even if counsel did not discuss fees until" settling, that does not excuse close scrutiny of class counsel's fee award—"fee negotiations [should have been] postponed until the settlement was judicially approved, not merely until the date the parties allege to have reached an agreement." *Id.* at 804. Moreover, the sequential negotiation of settlement and fees did not save the unfair settlements in *Bluetooth*, *Baby Products*, and *Dry Max Pampers*, either.

The other cases are similarly distinguishable:

- In both *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005), and *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997), class counsel's fee was based on the size of an actual settlement fund established by a securities-fraud defendant against which any class member could claim. Neither case addresses Rule 23(e), Rule 23(h), the Class Action Fairness Act, or later precedent such as *Baby Products*. Indeed, in *Taubenfeld*, the objector preserved nearly no arguments whatsoever, and it's hard to see why it is relevant to anything here.

- In *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007), the settling defendants created an actual fund against which class members could claim, with reversion to *cy pres* rather than the defendant for unclaimed funds, and there is no indication that objectors made the specific *Baby Products* argument about deliberately structuring the settlement to prevent claims that Schulz makes here.

- The two district-court cases Saltzman cites, *Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364 (N.D. Ill. 2011), and *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 810 (E.D. Wisc. 2009), are simply wrong. In any event, there's no indication that the objectors in those non-binding cases raised the arguments that Schulz is raising here; they certainly fail to address the appeals-court precedent that Schulz raises.

Saltzman attempts to justify his counsel's fee by pointing to common-fund cases. But there is no common fund here—a point that Pella itself made, and which Saltzman made a point of adopting. Pella Br. 41; Saltzman Br. 46 n. 27.

□

The fee award is unreasonable. It is based on an improper valuation of a settlement that makes it hard to recover money, exonerates the defendant from almost all liability, caps the available damages, and places almost no limits on the defendant's right to challenge a class member's claim. In exchange for that, class members win the chance to receive capped cash payments with the likelihood of

receiving nothing more than a warranty they already had and a coupon for windows they probably don't want and won't use. Appellees fail to rebut the persuasive precedents condemning these sorts of settlements with illusory relief. The Court should reverse.

## II. The district court committed reversible legal error by failing to recognize the *Bluetooth* signs of self-dealing.

Saltzman struts that there is no evidence of collusion and that the district court found none. Saltzman Br. 23-25. But Schulz did not argue that there was. Schulz's argument, instead, was that absence of collusion was necessary, but not sufficient: "It is not enough that the settlement happened to be at 'arm's length' without explicit collusion; the settlement must be objectively reasonable as well and avoid self-dealing by the class counsel." Schulz Br. 22. And though Schulz's argument was that self-dealing, not collusion, was the concern, Saltzman does not respond to those concerns; the only time that "self-dealing" appears in his brief is in the first sentence of a footnote;[5] Saltzman never even mentions *Bluetooth*. Saltzman's inability—his lack of attempt to—distinguish the case or explain why the Seventh Circuit should not adopt *Bluetooth* is reason enough to reverse.

Pella's brief does not mention self-dealing, either. This is unsurprising: self-dealing concerns arise precisely because a class-action defendant's concern is how much it costs the defendant to end the dispute, not how that money is distributed—

---

[5] "Appellant Schulz argues that the 'kicker' is a sign of self dealing." Saltzman's Br. 46 n.27.

which is precisely why "collusion" is a red herring when defendant indifference is sufficient to permit class counsel to rip off the class. *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004); *Staton v. Boeing Corp.*, 327 F.3d 938, 960, 964 (9th Cir. 2003).

Even considering Saltzman's fusillade against "collusion" as an attempt to rebut the self-dealing arguments, they are unconvincing.

**The disproportionate fee to class counsel** was demonstrated in Section I, above.

**The "clear sailing" clause still suggests self-dealing**, particularly under the circumstances of this case. Saltzman's claim that only the Ninth Circuit has condemned clear sailing is false. *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991). Saltzman points to district courts that consider the clear-sailing clause and then disregard it, but fails to explain why *Bluetooth* is wrongly decided much less why this Court should create a circuit split.

**The reversion of unpaid fees to Pella still suggests self-dealing**. First, Pella and Saltzman do not dispute that the "clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit" if class counsel's fee is excessive. Schulz Br. 29, citing *Bluetooth*, 654 F.3d at 949 . They do not dispute, that is, that the clear-sailing term displays the money in the left hand while the kicker term is a right hand slapping away everyone besides class counsel who reaches for the left hand. Indeed, they affirmatively argue that the kicker

precludes discussion over the excessive fee, notwithstanding precedent to the contrary.

Second, the only justification that Saltzman and Pella offer for the reversion-of-unpaid-fees term is that there is no common fund in this settlement to which the reduced fees could flow for the class's benefit. Saltzman Br. 46; Pella Br. 41. This is superficially appealing, but wrong on closer inspection. A reduction in the fee could keep Pella's total expected payment—a total it has already demonstrated its willingness to spend to settle the class's claims—the same while increasing the settlement's damage caps. Similarly, the fee reduction could permit cash payments to some coupon- or warranty-award class members who would otherwise receive no cash. At the very least, a reduction in the fee could go to *cy pres*.

Each factor the Court should examine suggests impermissible self-dealing. The district court failed to consider any of these factors, or explain why *Bluetooth* does not apply; so do the appellees. Courts have a responsibility to be on the lookout for such self-dealing at the expense of the class, and the district court ignored that responsibility here. Appellees have waived the issue, and this Court should adopt *Bluetooth* and reverse for consideration of the indicia of self-dealing.

## III.   Rule 23(a)(4) and Rule 23(g) were not met, requiring class decertification.

For three independent reasons, the class was improperly certified as a matter of law, requiring reversal.

A.    **The proposal to pay Saltzman and the new class representatives, but not the objecting class representatives, demonstrates a conflict.**

Class representatives must fairly and adequately represent the class, a requirement that prevents them from having a divergent interest that would create a conflict between representative and class member. Fed. R. Civ. P. 23(a)(4); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997); *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011). Class counsel tried to deprive some class representatives of incentive awards because they disagreed with the settlement.[6] In short, they tried to reward some class members for the work they did to support the case while denying that reward to others. Class counsel forced upon the objecting class representatives had the incentive to withdraw their objections after seeing that the sole original class representative who supported the settlement was to receive $10,000. They try to excuse this perversion of the class representative's role by claiming that they couldn't contact the objecting representatives, who had hired other counsel—but that is no reason they could not have contacted those representatives through that counsel. *See* Saltzman Br. 36-37 n.21. Too, their excuse that the district court did not let them get away with it, Saltzman Br. 36, must fail. The order that all of the class representatives be paid could not, *ex post*, undo class counsel's improper disincentive.

---

[6] A128 at ¶ 101 ("The Named Plaintiffs will apply to the Court for an incentive award…. Class Counsel has recommended an incentive award of $10,000 to Dr. Leonard Saltzman and $5,000 each to plaintiffs Tim Bastiaanse, Joseph Palmiotto, Brad Zurn and Judith McClosky."); A82 at ¶ 27 (defining "Named Plaintiffs" as Saltzman, Zurn, Bastiaanse, Palmiotto, and McClosky, but not the objecting class representatives).

And the state sub-class representatives, contrary to Saltzman's argument, weren't chosen before the settlement was finalized. As the timeline establishes, class counsel hand-picked class representatives after Pella and class counsel had agreed to the terms of the settlement. Pella Br. 35 (Sept. 2011: Agreement in principle on settlement terms); Saltzman Br. 32 (Oct. 2011: New class representatives added). Seeking out class representatives after a settlement has been reached implies that the representatives are there—and paid—only because they support the settlement on class counsel's terms.

**B.    There is a conflict between Saltzman's interests and the interests of the class.**

Nor can Saltzman rebut the inadequacy of his own status as a class representative. Indeed, rather than point to the reasons why there is no conflict of interest in asking a father-in-law to support an agreement that will entitle his son-in-law a large chunk of an $11-million kitty, Saltzman responds, "How dare you!" Saltzman Br. 5, 30, 35. But ire is not a counter; whether he believes himself free of influence or not, Saltzman's incentive to agree to the settlement—to receive $10,000 of his own and to have his son-in-law receive a substantial payday—is an incentive shared by neither the objecting class representatives nor the absent class members themselves.

Saltzman's fallback position is the observation that there is no *per se* rule against his potentially compromised adequacy. Saltzman Br. 29-30. Schulz already pointed out that this Court had used that language. Schulz also pointed out that the Court twenty

years later stated that the landscape had changed and that class counsel's using a relative as a named plaintiff "is of course improper." Opening Br. 16-17, citing *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977), and quoting *Greisz v. Household Bank (Ill.), N.A.*, 176 F.3d 1012, 1014 (7th Cir. 1999). On this latter point, Saltzman offers no response, failing to distinguish *Greisz* or *London v. Wal-Mart, Inc.*, 340 F.3d 1246 (11th Cir. 2003). And Saltzman and Perry cannot defend Saltzman's inadequacy by pointing to the other representatives as checks upon his conflicted loyalties. Representatives selected post-settlement are chosen by class counsel—and are chosen knowing, particularly here, that supporting the settlement will lead to selection as a representative and receipt of an incentive award. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163-66 (9th Cir. 2013).

Class counsel justifies the use of his father-in-law as class representative by pointing to an Illinois state court that signed off on the same corrupt arrangement. Of course, such Illinois state-court shenanigans are exactly why Congress passed the Class Action Fairness Act to move national class actions into federal court and better protect absent class members from abusive settlements. The class must be decertified. Permitting such a maneuver would be for the Court to approve the hiring of the class-counsel fox as night watchman for the class members' roost, and would create an unnecessary circuit split.

**C.     Just as Saltzman is an inadequate representative, his son-in-law is inadequate to serve as counsel.**

The point need not be belabored, but it is still true: the truth or falsity of the allegations against class counsel Paul Weiss is irrelevant to the question of whether there was a conflict between his interests and the class's interests. Schulz Br. Responding to the argument of his inadequacy by denouncing those allegations is thus no response at all, because disqualification was required even assuming *arguendo* that the allegations were false. This leaves the response that Weiss was but one lawyer among many representing the class. Weiss and his firm, however, were lead counsel for the class and held primary responsibility for the class's representation. Fed. R. Civ. Proc. 23(g). The professionalism of the brigade colonels cannot overcome the strategy ordered by the division's general. If Weiss is inadequate, that inadequacy infects the class's entire case. (This is especially true where, as here, the district court's fee order only creates a lump sum for Weiss to distribute amongst his co-counsel at his "sole discretion." A131. His co-counsel were thus disincentivized to challenge any settlement decisions by Weiss.)[7] The fact that the settlement permits Weiss to borrow $2 million against the settlement fund before final approval is further evidence that the settlement process was tainted by Weiss's financial and ethical troubles. A130. The district court abused its discretion in refusing to consider Schulz's objection that Weiss was inadequate. That abuse of discretion requires the Court to reverse.

---

[7] Such a clandestine allocation outside of the district court's authority is a *per se* violation of Rule 23(h). *In re High Sulfur Content Gas. Prod. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008). The district court's legal error in approving a settlement with such a clause is yet another independent reason to reverse.

IV.    **Appellees waive response to the reversible error of failing to give reasons for rejecting objections.**

Schulz demonstrated that the district court committed reversible error by failing to provide reasoning for his summary rejection of objections, preventing "meaningful appellate review." Schulz Br. 18 (citing cases); *id.* at 20-21.

Appellees fail to mention much less distinguish the persuasive appellate precedent requiring reversal; they cite nowhere in the record where the district court gave "reasoned responses" to Schulz's objections, as the law requires. *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012). They have waived the issue. Reversal is required.

V.    **Schulz has standing.**

Saltzman, in violation of Fed. R. App. Proc. 32, incorporates over 6,000 words of motions briefing on the standing question in his jurisdictional statement in addition to the nearly 14,000 words in his brief. For the reasons stated in Schulz's opposition to the motion to dismiss and cross-motion for sanctions (Appeal No. 13-2091 Dkt. 44), Schulz has standing. The settlement unfairly waives Schulz's future claims for unmanifested injury against Pella; Schulz is in the same shoes as the successful objectors in *Amchem*, who also had not yet filed claims for as-yet unmanifested injuries. 521 U.S. at 626. The claims deadline for Schulz is not until 2021, so Saltzman has no basis to argue that Schulz has no claim against the settlement. Saltzman's assertion that Schulz cannot challenge the fairness of a settlement where class counsel receives a disproportionate share of the proceeds is "patently meritless": "class

counsel's argument that objectors have no standing to contest the fee arrangement is patently meritless: the fee agreement clearly does impact their interests, as it is, for practical purposes, a constructive common fund." *GMC Pick-Up*, 55 F.3d at 820 (cited by Saltzman). *Accord Bluetooth*, 654 F.3d at 947-49 & n.9 (noting that such an arrangement is evidence of settlement unfairness); *Dry Max Pampers*, *supra* (overturning settlement on challenge of objector who objected to claims process as impossible). And objectors who have objected to the entire settlement are entitled to raise all issues relating to settlement fairness with respect to entire class. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1183 & n.1 (10th Cir. 2002) (citing *Devlin v. Scardelletti*, 536 U.S. 1, 9 (2002)). Schulz has standing.

## Conclusion

The Court should reverse the judgment approving the settlement and certifying the class. Circuit Rule 36 should apply on remand.

Dated:  September 23, 2013            Respectfully submitted,

                                    */s/ Christopher A. Bandas*
                                    Christopher A. Bandas
                                    BANDAS LAW FIRM, P.C.
                                    500 North Shoreline, Suite 1020
                                    Corpus Christi, Texas  78401
                                    Telephone:  361/698-5200
                                    Facsimile:  361/698-2222
                                    *Attorneys for Appellant Michael J. Schulz*

**Certificate of Compliance with Fed. R. App. 32(a)(7)(c)**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, Type Style Requirements, and Appendix Requirements:

1.　　This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 6,795 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.　　This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Garamond font.

Executed on September 23, 2013.

　　　　　　　　　　　　　*/s/ Christopher A. Bandas*
　　　　　　　　　　　　Christopher A. Bandas
　　　　　　　　　　　　BANDAS LAW FIRM, P.C.
　　　　　　　　　　　　500 North Shoreline, Suite 1020
　　　　　　　　　　　　Corpus Christi, Texas　78401
　　　　　　　　　　　　Telephone:　361/698-5200
　　　　　　　　　　　　 Facsimile:　361/698-2222

## Proof of Service

I hereby certify that on September 23, 2013, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, thereby effecting service on counsel of record who are registered for electronic filing under Cir. R. 25(a).

Executed on September 23, 2013.

*/s/ Christopher A. Bandas*

Christopher A. Bandas
BANDAS LAW FIRM, P.C.
500 North Shoreline, Suite 1020
Corpus Christi, Texas  78401
Telephone:  361/698-5200
Facsimile:  361/698-2222