# ANDERSON + WANCA
### ATTORNEYS AT LAW

---

3701 ALGONQUIN ROAD, SUITE 760, ROLLING MEADOWS, IL 60008
TEL: (847) 368-1500 * FAX: (847) 368-1501
EMAIL: BUSLIT@ANDERSONWANCA.COM

June 27, 2014

Circuit Clerk
U.S. Court of Appeals, Room 2722
219 S. Dearborn Street
Chicago, IL 60604

Re:    No. 13-2091
       Kent Eubank, et al. v. Pella Corporation, et al.

Dear Circuit Clerk:

Appellants and Replaced Named Class Representatives Kent Eubank, Thomas Riva, and William and Nancy Ehorn pursuant to Rule 28(j) and their ethical obligations bring to the attention of the Court two recent developments:

1.    Following the Court's opinion on June 2, 2014, Leonard Saltzman made a public statement that had he been fully informed of the settlement he would not have supported it. *See* Exhibit A. This appears to be why CLG's Petition Dkt. 100 was not brought on behalf of Leonard Saltzman. Requests to CLG for clarification and explanation have gone unanswered. Group Exhibit B.

2.    Following the unfolding of the events in No. 1 above, Jeffrey Leon, Jamie Weiss-Saltzman, Richard Burke (all CLG), Jonathan Shub (Seiger Weiss co-class counsel who also testified on behalf of Weiss at the ARDC hearing), and their allies in the Pella MDL filed papers to remove *Sadler v. Pella*, Case No. 1:14-cv-03271 from the Northern District of Illinois to the District of South Carolina. Exhibit C. The coincidence of the timing suggests that the filing of Petition Dkt. 100 on June 16, 2014, may have been to delay remand of this case and/or provide additional time to remove *Sadler*.

Respectfully submitted,

ANDERSON + WANCA


s/David M. Oppenheim
David M. Oppenheim

DMO/tn
Attachment
cc: Record Counsel

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 27, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


s/David M. Oppenheim

Printed on 6/27/14 from: http://www.forbes.com/sites/danielfisher/2014/06/02/pella-class-action-settlement-is-so-bad-judge-tosses-lawyer-and-his-father-in-law-lead-plaintiff/



**Comments**

Called-Out          EXPAND ALL COMMENTS                                                    + Follow Comments

**Leonard Saltzman** 3 weeks ago

I am actually Leonard Saltzman, the "father-in-law" mentioned in the headline and just wanted to try and set the record straight if possible. I brought this case to Paul M Weiss' firm 8 years ago because of spending tens of thousands of dollars replacing out of warranty defective Pella windows. His firm, where my daughter was also an attorney, did class action and I thought it appropriate to bring it to their attention. What has happened over the years (and the facts in the article are all true), has been a nightmare and it seems I am now painted with the same brush as Paul Weiss. I acted in good faith all along, never asked for anything more than some compensation for my repair expenditures, and was never told about the other original plaintiffs leaving the case and being replaced. I was also told at the end of the case that it was "the best settlement we could get" and was never informed about the $2 million upfront payment, or that it was inappropriate in the first place for me to be the plaintiff as a family member. This has been a family tragedy, and along with all the other issues mentioned above, I have had to see myself painted as a rubber stamp plaintiff, which is certainly not the truth. After seeing the facts unrolling since Judge Posner's ruling, I am in agreement with him that it was a bad settlement and hope that other lawyers can resolve this in a more professional manner

✓ Called-out comment

Reply

**Daniel Fisher,** Forbes Staff 3 weeks ago          [Author]

Thanks for setting the record straight. There are always facts left by the wayside by the time a case gets to the appeals-court level and your comment reveals some of them.

▲ CONFERENCES AND MORE

Share

Next Post

EXHIBIT A

**From:** "Richard J. Burke" <rich@complexlitgroup.com>
**Date:** June 24, 2014 at 1:45:27 PM CDT
**To:** Ted Frank <tfrank@gmail.com>, "Richard J. Burke" <rich@complexlitgroup.com>
**Cc:** "Jeffrey A. Leon" <jeff@complexlitgroup.com>, David Oppenheim <doppenheim@andersonwanca.com>, John Pentz <jjpentz3@gmail.com>, Chris Bandas <cbandas@bandaslawfirm.com>, "aaron.vanoort@faegrebd.com" <aaron.vanoort@faegrebd.com>
**Subject: RE: 13-2091, Eubank v. Pella Corp.**

Mr. Frank
I am on the road so I will give you the short answer
Petition was not filed on behalf of Dr. Saltzman

Sent via the Samsung GALAXY S®4 Active™, an AT&T 4G LTE smartphone

-------- Original message --------
**From:** Ted Frank
**Date:**06/23/2014 11:57 PM (GMT-05:00)
**To:** "Richard J. Burke"
**Cc:** "Jeffrey A. Leon" ,David Oppenheim ,John Pentz ,Chris Bandas ,aaron.vanoort@faegrebd.com
**Subject:** Re: 13-2091, Eubank v. Pella Corp.

Mr. Burke,

The point is that, even after three requests for a simple yes-no answer, you have given me no reason to believe that Dr. Saltzman has authorized you to make this filing, in which case it violates 28 USC s1927, and any number of other more important things you don't need me to remind you of. I'm giving you one last chance to correct your error before a sanctions motion is filed. That you think your former client is mistaken does not authorize you to file on his behalf without his permission, and his Forbes letter stated he opposed settlement approval and wanted new attorneys for the class.

I'm not sure why you mention Rule 40(a)(3). "The court will deny rehearing if it does not request a response" does not mean "The court will grant rehearing if it requests a response." Especially if

EXHIBIT B

a special master determines that Dr. Saltzman did not authorize the filing, and that determination should be made before my client is required to waste time responding to an unauthorized motion.

So for a fourth and final time, I ask the simple yes-no question that you have refused to answer the first three times I asked it: did Dr. Saltzman authorize you to file this motion for rehearing in his name?

Theodore H. Frank

On Monday, June 23, 2014, Richard J. Burke <rich@complexlitgroup.com> wrote:

Mr. Frank,


Your prior emails have not been responded to because they did not merit any response. The circuit court has granted you an opportunity to file an answer under Rule 40(a)(3). As the rule states "[b]ut ordinarily rehearing will not be granted in the absence of such a request." I have no intention of dictating to you what your answer should be. It is my belief that the Petition for Rehearing is properly filed, is meritorious, and should be granted. Your emails make no mention of the merits of the Petition but rather focus on the peripheral issue of Dr. Saltzman's Forbes letter. Although I suspect that the court is already aware of that letter, it is clear that the "misapprehensions of the record" in the opinion were likewise the source of Dr. Saltzman's misapprehensions. As such the Saltzman letter is justification for the court to correct its opinion, not deny the Petition.


As for the Petition for Rehearing, it was properly filed. The opinion contains serious misapprehensions of the record which we have asked the panel to correct.


Richard Burke


*Richard J. Burke*

*Complex Litigation Group LLC*

*1010 Market St., Suite 1340*

*St. Louis, Missouri 63101*

*(847) 433-4500, ext 2603*

*Cell 312-972-0680*

*rich@complexlitgroup.com*

http://www.complexlitgroup.com

Complex Litigation Group is committed to our environment. Please join us and consider not printing this e-mail unless necessary.

This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. This e-mail message and any files transmitted with it are also subject to the attorney-client privilege and attorney work-product doctrine, and contain confidential information intended only for the person(s) to whom this e-mail message is addressed. If you have received this e-mail message in error, please notify the sender immediately by telephone at (847) 433-4500 or by electronic mail to rich@complexlitgroup.com and destroy the original message without making a copy. Thank you.

**From:** Ted Frank [mailto:tfrank@gmail.com]
**Sent:** Monday, June 23, 2014 10:13 AM
**To:** Jeffrey A. Leon
**Cc:** David Oppenheim; John Pentz; Chris Bandas; Richard J. Burke; aaron.vanoort@faegrebd.com
**Subject:** Re: 13-2091, Eubank v. Pella Corp.

Mr. Leon,

This is a third and final request for you to explain why you should not be sanctioned for filing a motion for rehearing on behalf of a client who has publicly disavowed the settlement you seek to reinstate and does not appear to have authorized your filing.

Please withdraw the motion for rehearing or provide the explanation by close of business today. We will otherwise file a motion for sanctions, attaching Mr. Saltzman's opposition to the settlement and endorsement of Judge Posner's opinion, and letting the Court know that you ignored three separate opportunities to explain yourself.

Sincerely,

Theodore H. Frank

On Tue, Jun 17, 2014 at 5:03 PM, Ted Frank <tfrank@gmail.com> wrote:

Mr. Leon,

Though you made two filings today after I sent it, I received no response to my email of this morning.

Please answer the two questions I raised by close of business tomorrow if you are taking the position that Mr. Saltzman has authorized a petition for rehearing or still supports the settlement.

Furthermore, page 12-13 of your petition for rehearing states that Mr. Bandas "left the case once his objector fee demands were rejected." It is my understanding that this statement is false, and neither Mr. Bandas nor Mr. Schulz made any objector fee demands. If you have any factual basis for this statement, please identify it by close of business tomorrow, or withdraw your petition for rehearing, or we will move for an order to show cause.

Sincerely,

Theodore H. Frank

On Tue, Jun 17, 2014 at 7:33 AM, Ted Frank <tfrank@gmail.com> wrote:

Mr. Leon,

I attach a screenshot, taken June 5, 2014, of a June 4 comment on a June 2 Forbes.com news article about the *Eubank v. Pella Corp.* decision. The author claims to be Leonard Saltzman. The comment states, *inter alia*, "After seeing the facts unrolling since Judge Posner's ruling, I am in agreement with him that it was a bad settlement and hope that other lawyers can resolve this in a more professional manner."

I have two questions:

1. Did Mr. Saltzman author the attached web comment?

2. Did Mr. Saltzman authorize the petitions for rehearing filed yesterday?

I omit Mr. Weiss from this email solely because I am unsure whether he is separately represented. Feel free to forward to him.

Thank you for your prompt attention to these questions, as your answers will affect how we respond to the petitions, assuming they are not withdrawn. *Cf. Thorogood v. Sears, Roebuck & Co.*, 627 F.3d 289 (7th Cir. 2010).

Sincerely,

Theodore H. Frank

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

_____

| | | |
|---|---|---|
| **IN RE: PELLA CORPORATION** | ) | **MDL Docket No. 2514** |
| **ARCHITECT AND DESIGNER SERIES** | ) | |
| **WINDOWS MARKETING, SALES** | ) | |
| **PRACTICES AND PRODUCTS** | ) | |
| **LIABILITY LITIGATION** | ) | |

_____

## <u>NOTICE OF RELATED ACTION</u>

The undersigned counsel for Plaintiffs, John Sadler and Geriann Gatziolis,  in the action

listed herein, hereby alerts the Judicial Panel on Multidistrict Litigation (the "Panel") of the

pendency of the following related action to the above-captioned matter and notifies the Panel that

an Amended Complaint that has been filed in the United States District Court for the Northern

District of Illinois:

> *John Sadler and Geriann Gatziolis, v. Pella Corporation*
> Case No. 1:14-cv-03271      Filed: 06/10/2014
> United States District Court for the Northern District of Illinois
> Honorable Edmond E. Chang

A true and correct copy of the docket sheet as of this date and Amended Complaint in the

above-referenced action are attached hereto as Exhibit "A."

This action shares common questions of fact with the other actions that are the subject of

the MDL No. 2514 proceedings.

Dated**:** June 26, 2014              Respectfully submitted,

                                  /s/ Daniel K. Bryson
                                  Daniel K. Bryson
                                  Matthew E. Lee
                                  **WHITFIELD BRYSON & MASON LLP**
                                  900 W. Morgan Street

1

EXHIBIT C

Raleigh, NC 27603
Tel: (919) 600-5000
Fax: (919) 600-5035
dan@wbmllp.com
matt@wbmllp.com

*Attorneys  for Plaintiff John Sadler and
Geriann Gatziolis*

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

_____

| | | |
|---|---|---|
| **IN RE: PELLA CORPORATION** | ) | **MDL Docket No. 2514** |
| **ARCHITECT AND DESIGNER SERIES** | ) | |
| **WINDOWS MARKETING, SALES** | ) | |
| **PRACTICES AND PRODUCTS** | ) | |
| **LIABILITY LITIGATION** | ) | |

_____

**<u>SCHEDULE OF ACTIONS</u>**

| Case Caption | Court | Civil Action No. | Judge |
|---|---|---|---|
| John Sadler and Geriann Gatziolis, Plaintiffs<br><br>Pella Corporation, Defendant | Northern District of Illinois | 1:14-cv-03271 | Edmond E. Chang |

Dated: June 26, 2014          Respectfully Submitted,

<u>/s/ Daniel K. Bryson          </u>
Daniel K. Bryson
Matthew E. Lee
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Fax: (919) 600-5035
<u>dan@wbmllp.com</u>
<u>matt@wbmllp.com</u>

*Attorneys for Plaintiff John Sadler and Geriann Gatziolis*

3

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

_____

| | | |
|---|---|---|
| **IN RE: PELLA CORPORATION** | ) | **MDL Docket No. 2514** |
| **ARCHITECT AND DESIGNER SERIES** | ) | |
| **WINDOWS MARKETING, SALES** | ) | |
| **PRACTICES AND PRODUCTS** | ) | |
| **LIABILITY LITIGATION** | ) | |

_____

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Related Action has been electronically filed with the Judicial Panel on Multidistrict Litigation this 26th day of June, 2014, by using the CM/ECF system which will send notice of electronic filing to all parties of record.

Dated: June 26, 2014                   Respectfully submitted,

                                       /s/ Daniel K. Bryson_____
                                       Daniel K. Bryson
                                       Matthew E. Lee
                                       **WHITFIELD BRYSON & MASON LLP**
                                       900 W. Morgan Street
                                       Raleigh, NC 27603
                                       Tel: (919) 600-5000
                                       Fax: (919) 600-5035
                                       dan@wbmllp.com
                                       matt@wbmllp.com

                                       *Attorneys for Plaintiffs John Sadler and
                                       Geriann Gatziolis*

4

# EXHIBIT

# A

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 6,1 (Chicago)
### CIVIL DOCKET FOR CASE #: 1:14-cv-03271

| | |
|---|---|
| Sadler et al v. Pella Corporation | Date Filed: 05/05/2014 |
| Assigned to: Honorable Edmond E. Chang | Jury Demand: Defendant |
| Cause: 28:1332 Diversity-Contract Dispute | Nature of Suit: 190 Contract: Other |
| | Jurisdiction: Diversity |

**Plaintiff**

**John Sadler**                                represented by     **Marc H. Edelson**
Edelson & Associates, LLC
45 West Court Street
Doylestown, PA 18901
(215) 230-8043
Email: medelson@edelson-law.com
*ATTORNEY TO BE NOTICED*

**Scott A. George**
Seeger Weiss LLC
1515 Market Street
Suite 1380
Philadelphia, PA 19102
(215) 564-2300
Email: sgeorge@seegerweiss.com
*ATTORNEY TO BE NOTICED*

**Jeffrey A. Leon**
Complex Litigation Group LLC
513 Central Avenue
Suite 300
Highland Park, IL 60035
847-433-4500
Fax: (847) 433-2500
Email: jeff@complexlitgroup.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Geriann Gatziolis**                          represented by     **Marc H. Edelson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott A. George**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey A. Leon**
(See above for address)
*ATTORNEY TO BE NOTICED*

## V.

## **Defendant**

## **Pella Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/05/2014 | 1 | COMPLAINT filed by John Sadler, Geriann Gatziolis; Jury Demand. Filing fee $ 400, receipt number 0752-9454265.(Leon, Jeffrey) (Entered: 05/05/2014) |
| 05/05/2014 | 2 | CIVIL Cover Sheet (Leon, Jeffrey) (Entered: 05/05/2014) |
| 05/05/2014 | 3 | ATTORNEY Appearance for Plaintiffs Geriann Gatziolis, John Sadler by Jeffrey A. Leon (Leon, Jeffrey) (Entered: 05/05/2014) |
| 05/05/2014 | 4 | MOTION by Plaintiffs Geriann Gatziolis, John Sadler to certify class (Leon, Jeffrey) (Entered: 05/05/2014) |
| 05/05/2014 | | CASE ASSIGNED to the Honorable Edmond E. Chang. Designated as Magistrate Judge the Honorable Sheila M. Finnegan. (daj, ) (Entered: 05/06/2014) |
| 05/06/2014 | 5 | ATTORNEY Appearance for Plaintiffs Geriann Gatziolis, John Sadler by Marc H. Edelson (Edelson, Marc) (Entered: 05/06/2014) |
| 05/12/2014 | 6 | MINUTE entry before the Honorable Edmond E. Chang: Status hearing set for July 22, 2014 at 8:30 a.m. The parties must file a joint initial status report with the content described in the attached status report requirements at least 3 business days before the initial status hearing. Plaintiff must still file the report even if not all Defendants have been served or have responded to requests to craft a joint report. Additionally, the parties must read Judge Chang's Case Management Procedures on the Court's website; those Procedures are considered standing orders in this case. Mailed notice (Attachments: # 1 Status Report Requirements) (slb, ) (Entered: 05/12/2014) |
| 05/13/2014 | 7 | MINUTE entry before the Honorable Edmond E. Chang: The Court has reviewed the complaint, R. 1, and issues the following jurisdictional inquiry. Plaintiffs rely on the Class Action Fairness Act, 28 U.S.C. § 1332(d), in their complaint, R. 1 para. 6, for the Court's subject matter jurisdiction. Plaintiffs allege that they are Illinois citizens. Id. paras. 3-4. Plaintiffs then allege that Defendant Pella Corporation is a corporation organized in Iowa. Id. para. 5. But Plaintiffs have not alleged where Pella Corporation has its principal place of business. Plaintiffs have failed to properly allege subject matter jurisdiction because a corporation is a citizen both of its state of incorporation and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Plaintiff shall either amend the complaint by 05/27/2014 with the necessary allegation (if it can do so in good faith), or file a memorandum by that date explaining why this case should not be dismissed for lack of subject matter jurisdiction.Mailed notice (slb, ) (Entered: 05/13/2014) |
| 05/14/2014 | 8 | ATTORNEY Appearance for Plaintiffs Geriann Gatziolis, John Sadler by Scott A. George (George, Scott) (Entered: 05/14/2014) |
| 06/10/2014 | 9 | MINUTE entry before the Honorable Edmond E. Chang: Plaintiffs have filed a class-certification motion 4 under Damasco v. Clearwire Corp., 662 F.3d 891, 896 (7th Cir. 2011), recognizing that it is too early to brief the motion. The motion is entered and continued. Mailed notice (slb, ) (Entered: 06/10/2014) |

| 06/10/2014 | 10 | MINUTE entry before the Honorable Edmond E. Chang: Plaintiffs have failed to respond to the jurisdictional inquiry of 05/13/2014. The response was due by 05/27/2014. The status hearing of 07/22/2014 is accelerated to 06/19/2014 at 8:30 a.m. If Plaintiffs have not filed the response or amended complaint by 06/13/2014, the case shall be dismissed for lack of subject matter jurisdiction. Mailed notice (slb, ) (Entered: 06/10/2014) |
|---|---|---|
| 06/10/2014 | 11 | AMENDED complaint by John Sadler, Geriann Gatziolis against Pella Corporation (Leon, Jeffrey) (Entered: 06/10/2014) |
| 06/16/2014 | 12 | STATUS Report *(Plaintiff's Initial)* by Geriann Gatziolis, John Sadler (Leon, Jeffrey) (Entered: 06/16/2014) |
| 06/16/2014 | 13 | MINUTE entry before the Honorable Edmond E. Chang: After the extension, the amended complaint has been filed and the jurisdictional allegations are sufficient. The status hearing of 06/19/2014 is reset to 07/22/2014 at 8:30 a.m. The initial status report requirement, R. 6, is reinstated as well. Mailed notice (slb, ) (Entered: 06/16/2014) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/26/2014 13:58:00 | | | |
| **PACER Login:** | th1334 | **Client Code:** | 4099-01-NC |
| **Description:** | Docket Report | **Search Criteria:** | 1:14-cv-03271 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN SADLER and GERIANN GATZIOLIS, On Behalf of Themselves and All Others Similarly Situated,<br><br>                     Plaintiffs,<br><br>          v.<br><br><br>PELLA CORPORATION, an Iowa Corporation,<br><br><br>                     Defendant.<br>_____ | )<br>)<br>)<br>)    **CASE NO. 14-cv-03271**<br>)<br>)<br>)    **CLASS ACTION COMPLAINT**<br>)<br>)<br>)    JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>)<br>) |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, John Sadler and Geriann Gatziolis ("Plaintiffs"), by and through their undersigned counsel, on behalf of themselves and all other persons and entities similarly situated, allege against defendant Pella Corporation ("Pella" or "Defendant") the following facts and claims upon knowledge as to matters relating to themselves and upon information and belief as to all other matters and, by way of this Class Action Complaint, aver as follows:

## INTRODUCTION AND SUMMARY OF ACTION

1.       This is a proposed class action brought by Plaintiffs on behalf of themselves and other consumers who own structures containing Pella Architect and Designer series windows ("Windows") as described more fully herein.

2.       Unknown to Plaintiffs and the Class, the Windows contain a latent defect that allows water to penetrate and leak behind the aluminum cladding, resulting in premature wood

rot and other physical damage to both the Windows and main structure. Pella's acts and omissions in connection with its design, manufacture, warrant, sale and delivery of these defective Windows constitute fraud, negligence, breach of implied warranty, breach of express warranty and unjust enrichment, and declaratory relief as appropriate.

## THE PARTIES

3.     Plaintiff John Sadler ("Plaintiff Sadler") is a natural person and citizen of Illinois. Plaintiff owns a home in Des Plaines, Illinois in which Pella Windows are installed.

4.     Plaintiff Geriann Gatziolis ("Plaintiff Gatziolis") is a natural person and citizen of Illinois. Plaintiff owns a home in St. Charles, Illinois in which Pella Windows are installed.

5.     Defendant, Pella Corporation, is an Iowa Corporation with its principal place of business located at 102 Main St, Pella, IA 50219, and is organized and existing under the laws of the State of Iowa. At all relevant times, Pella Corporation transacted and conducted business in Illinois.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that (i) there is complete diversity (Plaintiffs are citizens of Illinois and Defendant is domiciled and incorporated in another state), (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars) exclusive of interests and costs, and (iii) there are 100 or more members of the proposed Plaintiffs' class.

7.     Venue lies in this District pursuant to 28 U.S.C. §1391 because Plaintiffs reside in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiffs'

claims occurred in this Judicial District. In addition, Pella does business and/or transacts business in this Judicial District, and therefore, is subject to personal jurisdiction in this Judicial District and resides here for venue purposes.

### **OVERVIEW**

8.      This case concerns Pella's failure to disclose to purchasers of its Windows, the builders of the purchaser's structures, and owners of the Windows, that the windows were defective in material and workmanship as a result of the design and manufacturing practices of Pella. As a result of the defect there is a high probability those Windows will fail, and likely already have developed wood rot in the Window sashes. The wood rot will progress to the frames and adjoining structure unless repaired and replaced before the rot progresses to those components. The defect is the product of Pella's design and manufacturing process: (a) the resulting wood rot is masked by the aluminum cladding of the Windows; (b) the wood rot is incipient and takes an extended period to advance to the stage in which it becomes visible upon ordinary inspection; and (c) because of its incipient nature and masking by the exterior cladding, the wood rot will likely not exhibit itself until it is so advanced as to become apparent upon ordinary inspection but not until after the Pella's limited warranty period has expired.

9.      The Windows cladding permits water penetration to expose the interior wood components without adequate wood preservative, drainage or evaporation, as such the cladding causes and contributes to cause an increase in the moisture content of the wood components beyond their capacity to resist wood rot and microbial colonization.

10.      Because the wood rot resulting from the defective design and manufactures does not become visible upon ordinary inspection until after years after installation, it is not detectable in spite of its presence within the Windows.

11.     Rather than acknowledge the existence of this defect, and its incipient consequences, Pella unilaterally drafted a limited warranty which is not calculated to provide any protection for this defect in material and workmanship, but to the contrary, is written so as to provide no meaningful remedy to consumers and owners of these Windows.

12.     In spite of its knowledge regarding the defect in the windows Pella uses the limited warranty to profit from the premium price charged for defective windows.

13.     At all relevant times, Pella had knowledge that the Windows were defective but took no action to: (1) inform purchasers or owners of the Windows of the defects; (2) recall the Windows; or (3) honor warranty claims or otherwise repair or replace Windows that had already been purchased. Instead, Pella concealed this knowledge.

14.     At all relevant times, Pella knew, or should have known, the Windows were (a) defective; (b) would experience wood rot to the sash components of the Windows; (c) would need to be repaired and replaced well short of the reasonably expected useful life of the Windows; (c) the defect, if known, would have failed to meet the reasonable expectations of purchases, and would not be sold at the premium price Pella charge for the Windows; and (d) that the limitation in its warranty, did and was calculated to shield liability for a known, material defect in the Windows.

15.     Rather than provide warranty protection, Pella chose to conceal, suppress or omit knowledge of the defect, and the material facts related to the defect, all the while distributing, marketing and selling the Windows which purported to be warranted to unsuspecting consumers, builders, and homeowners across the Class States.

16.     Pella presented the warranty to consumers as protection for defects in material and workmanship all the while knowing that it provided no warranty protection for the Window

–4–

defect as alleged herein, provided no meaningful, or at best only illusory, benefits when in fact it was calculated to not provide warranty benefits, and as such was deceptive and unconscionable.

17.     Pella knew, or negligently should have known, prior to sale to Plaintiffs and the Class that, for the indefinite future, there was a substantial risk that its Windows would rot behind the aluminum cladding, failed to disclose that risk, and presented the Windows as a high quality product free of defects which Pella knew was false.

18.     Pella's conduct thereby deprived consumers of the opportunity to negotiate additional warranty coverage, negotiate a lower price to reflect the risk posed by the defect, or simply avoid the risk altogether by purchasing a different manufacturer's windows.  Thereafter, the undisclosed risk occurred – Plaintiffs' Windows (and thousands of others) have rotted– and Plaintiffs and the Class have been damaged in the amount it will cost, or they paid, to repair, install, and replace the Windows.

19.     Consumers reasonably expected that their Windows would not rot behind the cladding, and that their Windows would last for their reasonable useful life without rotting.

20.     The reasonable expectation is that the Windows will last without rot to their interior components, as long as the exterior wall into which they are installed, conservatively 30 years.

21.     Consumers, like Plaintiffs and the proposed class, have a reasonable expectation:

    a.     that a manufacturer such as Pella Corporation would make a disclosure to consumers if it determined there was a significant evidence of wood deterioration in their cladded windows;

     b.     that a manufacturer such as Pella Corporation would repair the latent defect – even if the defect did not exhibit itself until after the warranty period expired – because the potential causes of the defect are within the control and responsibility of the manufacturer (not the consumer); and

     c.     that had there been evidence of wood deterioration in their clad Windows, either because the wood preservative was inadequate protection for the reasonable life of the Windows; or that the cladding was contributing to increased moisture retention in the wood components of the Windows, that Pella would extend replacement repair and the costs associated therewith to owners of the Windows.

### PELLA'S CONDUCT WITH RESPECT TO THE WIDESPREAD WOOD ROT <u>PROBLEM AT ISSUE HERE</u>

22.    Pella has been aware, or but for its negligence should have been aware, that its Windows were manufactured with wood components which needed to be protected from exposure to water penetrating behind the cladding of its windows and that the failure to do so significantly increased the moisture retention of those interior wooden components under circumstances where they could not dry in sufficient time to prevent the initiation of progressive wood rot.

23.    Pella knew (or but for its negligence or reckless indifference would have known) that it, or its distribution channels were going continue receive, and did receive reports of wood rot in the Windows.  Pella also knew, or should have known, that even if diligently inspected Window owners would not (a) be capable of detecting wood rot until it was significantly advances, likely years after the rot began; (b) be able to determine the cause of the problem as a defect in material and workmanship; and (c) would not be able to determine the steps to be taken to remediate the wood deterioration.

24.    Thus, Pella knew (or but for its negligence, or reckless indifference would have known) that for the indefinite future: (a) the risk of wood rot was substantial; (b) Pella's

–6–

customers were unaware of that substantial risk; (c) those customers had a reasonable expectation that Pella would disclose that risk and cure the latent defect, even if the defect did not exhibit itself until after the warranty period had expired; and (d) that it did not intend to honor warranty claims for the known defective Windows.

25.     Despite such knowledge, or as a result of its negligence or reckless indifference, Pella did not disclose to the market or otherwise that: there was a substantial risk their Windows would manifest the defect late in, or after the warranty period; and, that Pella's warranty, as they drafted it, would provide no warranty benefits for the known risk of their defective Windows.

26.     Furthermore, when questioned about wood rot, Pella would claim faulty installation, excessive moisture in the home, or would deny claims as "out of warranty" without disclosing the defect.

27.     On information and belief, in an attempt to correct the defect, Pella made various, ineffectual changes in the Windows, including application of sealants, wood preservatives all of which failed to correct the defect or mitigate its consequences.

28.     At all relevant times, Pella had knowledge that the Windows were defective but took no action to: (1) inform owners of the Windows of the defects; (2) recall the Windows; or (3) otherwise repair the Windows that had already been purchased. Instead, Pella concealed this knowledge.

29.     At all relevant times, Pella knew its Windows were defective, but chose to conceal, suppress, or omit this material fact while distributing, marketing, and selling the Windows to unsuspecting consumers, builders, and homeowners in Illinois and throughout the United States.

## PLAINTIFF SADLER'S EXPERIENCE

30.     Plaintiff Sadler installed the Pella Windows on his home in late 2002 and early 2003.

31.     Unknown to Plaintiff, the Windows were defective in that they allowed water to penetrate the area behind the aluminum cladding, which caused condensation, wood rot, leaks and other failures as described.

32.     The characteristics of the Window defect (that allowed for the water to penetrate the aluminum cladding and failed to protect the wood from rot) were present in the Windows when they left the factory, and were part of the Window by design and manufacture.

33.     Plaintiff has wood rot and other damage to the Windows.

34.     Plaintiff discovered fungus growing under his windows in 2011.  Plaintiff discovered rot in his Windows in 2013, at which time Plaintiff contacted Pella.  Pella inspected Plaintiff's home and determined that some of his Windows were rotted.

35.     Pella offered to replace Plaintiff's Windows, which Pella determined were rotted.  However, Pella advised Plaintiff that he would have to pay for the cost of the replacement Windows and the cost to install the Windows.  Pella sent Plaintiff a quote for $1,735.42, which would cover installation costs.  Unsatisfied, Plaintiff did not accept Pella's offer.

## PLAINTIFF GATZIOLIS' EXPERIENCE

36.     Plaintiff Gatziolis' home was built in 2004, at which time Pella Windows were installed.

37.     Unknown to Plaintiff, the Windows were defective in that they allowed water to penetrate the area behind the aluminum cladding, which caused condensation, wood rot, leaks and other failures as described.

–8–

38.    The characteristics of the Window defect (that allowed for the water to penetrate the aluminum cladding and failed to protect the wood from rot) were present in the Windows when they left the factory, and were part of the Window by design and manufacture.

39.    Plaintiff has wood rot and other damage to the Windows.

40.    Plaintiff had problems with her Windows approximately four years after installation, but no indication of rot.  However, Plaintiff's windows began to exhibit worse signs of failure, so she contacted Pella in 2011. At that time, Pella inspected Plaintiff's home and denied that her Windows were defective despite signs of rotting and mold.

41.    Below are three photographs which are fair and accurate representations of the visible damage to the Windows:

 



## COMMON FACTUAL ALLEGATIONS

42.      Upon information and belief, Pella has sold, directly or indirectly (through dealers and other retail outlets), tens of thousands of Windows in Illinois and the Class States.

43.      Pella sells its Windows through third party sellers or through its directly-owned showrooms.

44.      At the time of sale, Pella warranted that each Window was fit for the ordinary purpose for which such goods were used and were free from defects in materials and workmanship.

45.      Pella represented and warranted that each Window conformed to the applicable Illinois building codes, applicable ASTM standards, applicable American Architectural Manufacturers Association ("AAMA") standards and applicable National Fenestration Ratings Council ("NFRC"), applicable Window & Door Manufacturers Association ("WDMA").

46.     These representations, described herein, became part of the basis of the bargain when Plaintiffs and Class Members, and/or their builders purchased the Windows, and/or assumed the warranty.

47.     In addition, these representations became part of the basis of the bargain when Plaintiffs and/or Class Members purchased the homes with Pella's express representations concerning the quality of the Windows.

48.     Further, Pella also provides an Owners' Manual that states, *inter alia*:, that the Windows:

      a.     have a "Proven resistance to water penetration." and,

      b.     are "Pella's most energy-efficient wood and windows and doors."

49.     Plaintiffs and Class Members relied on Pella's warranty, published specifications and/or advertisements regarding the quality of the Windows.

50.     However, the Windows do not conform to these express representations and warranties, and, as alleged herein, Pella breached its express warranties and representations concerning these Windows.

51.     The Windows suffer from various design deficiencies which further discovery will establish in detail, including, a defect in the design of the sill extrusion and sill nailing fin attachment as well as a defect in the design of allowing a gap between the jamb gasket and the sill gasket. Due to these design defects, water is permitted to be trapped between the aluminum and the operable wood frame causing damage to the Windows and other property within the home as well as permit leaks.

52.     Because the Windows permit water intrusion, they violate the Illinois building code and industry standards, including the applicable Building Codes, AAMA standards, NFRC standards, WDMA standards, and/or ASTM standards as well as Pella's express representations and warranties.

53.     The defects and deficiencies are due to fundamental design, engineering, and manufacturing errors well within Pella's area of expertise. Indeed, Pella touts its almost 90 year history of designing and manufacturing windows and doors on its website and promotional materials.

54.     In addition to the express representations and warranties regarding the quality of the Windows discussed herein, Pella also ships a Limited Warranty with its Windows.  Upon information and belief, the Limited Warranty states, "If Pella is given notice of a defect in materials or workmanship occurring within ten  (10) years from the date of sale by Pella or its authorized dealer, Pella shall, at its sole option: 1) repair or replace the defective part(s) or product(s) (with cost of labor included only within two [2] years of the date of sale by Pella or its authorized dealer) or 2) refund the original purchase price."

55.     However, Pella's shipping of the Windows with prior knowledge of the defects, or with negligent or reckless disregard of the presence of defects, constituted a breach of its express warranty, makes the limitations of the Limited Warranty unconscionable in all respects, and therefore is void *ab initio*.  Further, by limiting its cost to fully repair and replace the Windows for only the first two years after sale, the Limited Warranty is unconscionable because Pella know that there is a defect in the Windows.

56.     The Limited Warranty is not a negotiated contract and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

−12−

57.     Moreover, during contact with the class members, Pella concealed its knowledge of repeated product defects in the Windows in the class members' structures.

58.     As Pella has known of the Window defects and has failed to timely honor its express and implied warranties, the Limited Warranty has failed of its essential purpose, and the limitations therein are null and void. Further, the limitations contained in the Limited Warranty are not conspicuous.

59.     Despite knowing of the defects in the Windows, Pella has not notified all purchasers, builders, and/or homeowners with the Windows of the defect nor provided uniform relief.

60.     Plaintiffs and Class Members have not received the value for which they or their builder bargained when the Windows were purchased. There is a difference in value between the Windows as warranted and the Windows containing the defect.

## CLASS ACTION ALLEGATIONS

61.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23.  The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the classes defined below:

> **INJUNCTIVE RELIEF CLASS:**
> **All persons and entities who are current or former owners of a structure on which Pella Designer or Architect Windows are installed.**
>
> **DAMAGES CLASS:**
> **All persons and entities who are current or former owners of a structure located within the United States on which Pella Designer or Architect Windows are installed and whose windows have exhibited wood rot.**

**(ALTERNATIVE) DAMAGES CLASS:**

**All persons and entities who are current or former owners of a structure located within Illinois, California, Florida, Michigan, New Jersey, and/or Ohio on which Pella Designer or Architect Windows are installed and whose windows have exhibited wood rot**

Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Pella and any entity in which Pella has a controlling interest or which has a controlling interest in Pella and its legal representatives, assigns and successors of Pella; and (c) all persons who properly execute and file a timely request for exclusion from the Classes.

62.    *Numerosity*:    The Classes are composed of thousands of persons geographically dispersed, the joinder of whom in one action is impractical.  Moreover, upon information and belief, the Classes are ascertainable and identifiable from Pella records or identifying marks on the Windows.

63.    *Commonality*:    Questions of law and fact common to the Classes exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes.  These common legal and factual issues include, but are not limited to the following:

    a.    Whether the Windows are defective;

    b.    Whether the Windows have not performed or will not perform in accordance with: (i) the reasonable expectations of ordinary consumers; (ii) industry expectations of a 30-year useful life;

    c.    Whether Pella knew or should have known of the defect;

    d.    Whether Pella concealed from consumers and/or failed to disclose to consumers the defect;

−14−

e.    Whether Pella breached the express warranty that the Windows were free of defects in material and workmanship when sold when in fact, Pella knew or should have known they were in defective by allowing water to penetrate behind the cladding and expose the interior wood components to moisture for prolonged periods without draining, evaporation, or adequate preservative to prevent wood rot;

f.    Whether Pella breached the implied warranty of merchantability by designing, manufacturing and selling the Windows when those windows would not pass without objection in the trade; were not fit for the ordinary purpose of exterior windows; did not conform to the promises and affirmations of fact Pella made concerning the Windows;

g.    Whether Pella breached the implied warranty of fitness for particular purpose when Pella knew that the windows would be used for applications as exterior Windows exposed to water, snow and moisture; and that wood rot was incipient and would not be recognized by ordinary inspection until it had reached an advanced stage.

h.    Whether Pella's Limited Warranty contained limitations, exclusions and disclaimers such as to cause it to fail of its essential purpose;

i.    Whether Pella's warranty was drafted and implemented to exculpate Pella from liability for Windows it knew, or should have known were defective when designed, manufactured and sold;

j.    Whether Plaintiffs and the Class members are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Classes for replacement of Windows and/or installation costs; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Windows as warranted and the Windows containing the defect; and (iii) the diminution of resale value of the structures containing the Windows resulting from the defect.

k.    Whether Plaintiffs and the Class members are entitled to replacement of their defective Windows with non-defective Windows;

l.    Whether Plaintiffs and the Class members are entitled to restitution and/or disgorgement.

m.    Whether Pella falsely advertised and marketed its products to consumers;

−15−

n.    Whether the Windows conform to the applicable Illinois building code and/or applicable industry standards;

o.    Whether the Windows damage other property within Plaintiffs and Class Members' homes;

p.    Whether Pella concealed the defective nature of the Windows;

q.    Whether Pella's Limited Warranty is unconscionable;

r.    Whether Pella's Limited Warranty adequately disclaimed its liability; and

s.    Whether Pella conduct as alleged is misleading, deceptive and/or unconscionable.

64.    *Typicality*:  Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Pella's conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Windows, Pella's conduct in concealing the defect in the Windows, and Plaintiffs' and Class Members' purchasing structures with the defective Windows.

65.    *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the Class.  Plaintiffs have retained counsel experienced in the prosecution of complex class actions, including consumer class actions involving product liability and product design defects.

66.    *Predominance and Superiority*:  This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable.   Should individual Class Members be required to bring separate actions, this Court and Courts throughout Illinois would be confronted with a

−16−

multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

## EQUITABLE ESTOPPELL/EQUITABLE TOLLING

67.     Upon information and belief, Pella has known of the defects in the Windows for years and has concealed from owners of the Windows and/or failed to alert the owners of the defective nature of the Windows, and has, upon inquiry, affirmatively misrepresented that the Windows are defect free (despite Pella knowing they are inherently defective), blamed owner maintenance or installation and/or has failed to class members of the defective nature of the Windows.

68.     Given Pella's failure to disclose this known but non-public information about the defective nature of the Windows – information over which it had exclusive control – and because Plaintiffs and Class Members therefore could not reasonably have known that the Windows were defective, Pella is estopped from relying and should not be allowed to rely on any exception regarding any statutes of limitation that might otherwise be applicable to the claims asserted herein.

69.     Further, on August 18, 2006, Dr. Leonard E. Saltzman filed a class action complaint in the Northern District of Illinois against Pella, alleging a defect similar to the one alleged here and asserting claims against Pella for defects in the design and manufacture of Pella's ProLine, Architect and Designer Series Windows. *See Saltzman et. al v. Pella Corp. et*

*al.*, No. 06-C-4481 (Zagel, J. presiding). The Class was certified only as to Pella's ProLine series, and in 2012 the parties reached a class action settlement which resolved claims relating to the ProLine Window series. The settlement is on appeal and therefore not Final under the terms of the settlement. Pella, though, has been on notice of the defects in the Architect and Designer Windows series since at the latest August 18, 2006, and thus claims involving those window lines have been tolled, under *American Pipe* and its progeny, since at least 2006.

70.        Pursuant to the doctrine of Equitable Tolling and/or Equitable Estoppel, the period for bringing claims shall not be barred due to the statute of limitations or statute of repose. The interest of justice requires equitable tolling in this case. In applying this doctrine the relevant factors include the claimant's diligence, the claimant's knowledge of the relevant facts and whether these statements misled the claimant. Accordingly, with respect to each and every cause of action and/or Count asserted herein, Plaintiffs expressly plead Equitable Tolling and/or Equitable Estoppel and their application thereto.

## COUNT I
## <u>NEGLIGENCE</u>

71.        Plaintiffs on behalf of themselves all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

72.        At all times material hereto, Pella designed and manufactured the Windows.

73.        Pella had a duty to Plaintiffs and to members of the class to design and manufacture Windows that were free of latent defects that would cause the Windows to leak and cause damage to Plaintiffs' home such as the wall cavity and the structure of the home.

74.        Pella had a duty to Plaintiffs and to members of the class to test the Windows to ensure adequate performance of the windows for a reasonable period of use.

−18−

75.     Pella had a duty to Plaintiffs and to class members to ensure that the window components were suitable, either by testing or by verifying third-party test results.

76.     Pella had a duty to Plaintiffs and to members of the class to ensure that the Windows complied with industry standards and all applicable building codes throughout Illinois.

77.     Pella failed to exercise ordinary and reasonable care in the design and manufacture of the Windows and in determining whether the Windows that it sold, and continued to sell, contained a latent defect that would result in the failure of the Windows to perform as reasonably expected.

78.     Pella failed to exercise ordinary and reasonable care in the design and manufacture of the Windows and breached the foregoing duties.

79.     Pella breached its duty to the Plaintiffs and class members to test the Windows to ensure adequate performance of the Windows for a reasonable period of use.

80.     Pella breached its duty to Plaintiffs and to class members to ensure that the window components were suitable, either by testing or by verifying third-party test results.

81.     Pella breached its duty to Plaintiffs and to members of the class to ensure that the Windows complied with industry standards and the applicable building codes.

82.     Pella breached its duty to Plaintiffs and to members of the class to forewarn purchasers, installers, and users regarding the known risk of product failures.

83.     The negligence of Pella, its agents, servants, and/or employees, include the foregoing, as well as the following acts and/or omissions:

    a.    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Windows without adequately and thoroughly testing them to all applicable standards and building codes;

−19−

     b.     designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Windows without adequately testing long term performance;

     c.     negligently failing to ensure that the Windows conformed to all applicable standards and building codes; and

     d.     concealing information concerning the defects inherent in the Windows from Plaintiffs and the Class members, while knowing that Pella's Windows were defective and non-conforming with accepted industry standards and building codes.

84.     Plaintiffs and the Class Members have been damaged because the defective Windows do not perform their ordinary purpose of sealing Plaintiffs' home against the elements.

85.     Plaintiffs and Class Members have also been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wantonness of Pella as aforesaid.

86.     As Pella's conduct was grossly negligent, reckless, willful, wanton, intentional, fraudulent or the like, Plaintiffs class is entitled to an award of punitive damages against Pella.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

87.     Plaintiffs on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

88.     Pella entered into contracts with retailers, suppliers and/or contractors to sell its Windows that were to be installed at Plaintiffs' and the Class Members' properties.

89.     Plaintiffs and the Class members are intended third party beneficiaries of those contracts because it was the clear and manifest intent of Pella that the contracts were to primarily and directly benefit Plaintiffs and the Class Members.

90.     Pella warranted that its Windows were merchantable and reasonably fit for their ordinary purpose, and would not cause damage as set forth herein.

91.     Pella breached the implied warranty of merchantability by selling its Windows that were defective and not reasonably fit for their ordinary purpose.

92.     Pella's Windows are defective because they cause and continue to cause damage as described more fully herein.

93.     As a result of Pella's breach of the implied warranty of merchantability, Plaintiffs and the Class Members have suffered and continue to suffer actual and consequential damages.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

94.     Plaintiffs on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

95.     Pella entered into contracts with retailers, suppliers and/or contractors to sell its Windows that was to be installed at Plaintiffs' and the Class members' properties.

96.     Plaintiffs and the Class members are intended third party beneficiaries of those contracts because it was the clear and manifest intent of Pella that the contracts were to primarily and directly benefit Plaintiffs and the Class members.

97.     At the time Pella entered into contracts with retailers, suppliers and/or contractors, Pella knew and had reason to know that its Windows were being purchased for the particular purpose of being installed at Plaintiffs' and the Class members' properties.

98.     Plaintiffs and the Class members, directly or indirectly, relied on Pella's representations and warranties that its Windows were suitable for the particular purpose of being installed at Plaintiffs' and the Class members' properties.

99.     Plaintiffs and the Class members, directly or indirectly, relied on Pella's representations that the Windows conformed to all applicable building codes and industry standards.

100.    Pella warranted that its Windows were fit for the particular purpose of being installed at Plaintiffs' the Class members' properties.

101.    Pella breached the implied warranty of fitness for a particular purpose by selling its Windows that were defective and not reasonably fit for their ordinary purpose.

102.    Pella's Windows are defective because they cause and continue to cause damage as described more fully herein.

103.    As a result of Pella's breach of the implied warranty of fitness for a particular purpose, Plaintiffs and the Class members have suffered and continue to suffer actual and consequential damages.

**COUNT IV**
**BREACH OF EXPRESS WARRANTY**

104.    Plaintiffs on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

105.    After putting their Windows into the stream of commerce, Pella expressly represented and warranted that the Windows were appropriate for their intended use and were free from defects and that they conformed to all applicable building codes and industry standards.

106.    Pella entered into contracts with retailers, Plaintiffs' Builders, Class Members' Builders, suppliers and/or contractors to sell its Windows that were to be installed at Plaintiffs' and the Class members' properties.

107.    Plaintiffs and Class members were intended third party beneficiaries of the contracts between Pella and their respective Builders.

108.    Pella's express and written warranties, and representations are applicable to the Windows installed in Plaintiffs' homes.

109.    Pella expressly represented and warranted that the Windows were appropriate for their intended use and were free from defects.

110.    Pella also expressly represented that the Windows conform to all applicable building codes and industry standards.

111.    Pella has made other representations, as described above, through its website, brochures, marketing materials, and representatives that the Windows are free from defects.

112.    The representations and warranties formed part of the basis of the bargain between Pella and the purchasers of the Windows, at the time of the sale.

113.    These representations, described herein, became part of the basis of the bargain when Plaintiffs, Plaintiffs' builders, Class Members and/or Class Members' builders purchased the Windows and/or purchased the homes containing the Windows.

114.    In addition, these representations became part of the basis of the bargain when Plaintiffs and/or Class Members purchased the homes with Pella's express representations concerning the standards to which the Windows conformed, and all manufacturers warranties were assigned to Plaintiffs.

115.   The limitations of damages contained in the express warranty provisions are harsh, oppressive and one-sided. The limitations related to the amount of damages, the type of remedies available to Plaintiffs and Class Members are unconscionable when Pella knows or should have known that there are defects in the design and manufacturing of the Windows.

116.   However, despite Pella's assurances, as described in detail *supra*, the Windows contain the aforementioned defects and do not conform to all applicable building codes and industry standards and are not free from defects.

117.   These aforementioned defects are present when the Windows leave Pella's control.

118.   Pella  has been repeatedly put on notice of the defects in the Windows by various methods described above.

119.   As Plaintiffs and Class members have defective Windows in their homes, which have not been and would not be sufficiently repaired or replaced by Pella, they have not received the value of what the window purchaser bargained for at the time the windows were sold or at the time they were transferred through the sale of the home.

120.   Pella breached the express warranty by selling its Windows that were defective and not reasonably fit for their ordinary and intended purpose.  Further, the Windows did not conform to the express representations contained within the Windows.

121.   By its conduct and defective products, Pella has breached its express warranty with Plaintiffs and members of the class.

122.   In addition, Pella has breached its express written warranties by not providing Plaintiffs with Windows which are free from defects and/or by suppressing warranty claims.

123.    Pella's written warranty is also unconscionable and fails of its essential purpose Because it is so replete with limitations, disclaimers and exceptions that it effectively prevents any warranty claim in spite of the Windows having a known defect when sold.

124.    Plaintiffs did not have an opportunity to negotiate or bargain for the terms of the express warranty provisions and any purported limitations contained therein. Upon information and belief, the distributors, contractors, and other customers of Pella did not and could not negotiate or bargain for the terms of the express warranty provisions and any purported limitations contained therein. Instead, Pella stood in a position of domination and control over the terms.

125.    Upon information and belief, Pella knew that the Windows had a history of failures, resulting in damage to other property, yet Pella failed and omitted to inform its distributors, its customers, Plaintiffs and Class Members on whose residence the Windows were installed.

126.    In light of the foregoing, Pella's limitations within its warranties are invalid and fail of their essential purpose and/or is unconscionable.

127.    The foregoing breaches of express warranty at issue were substantial factors in causing damages to Plaintiffs and Class Members.

128.    As a direct and proximate result of Pella's breach of the express warranty on the Windows, the Plaintiffs and Class Members have suffered actual and consequential damages.

### COUNT V
### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act,
### 815 ILCS 505/1, *et seq.*
### (On behalf of Plaintiffs and Illinois Class Members)

129.     Plaintiffs on behalf of themselves and similarly situated residents of Illinois, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

130.     The conduct described above and throughout this Complaint took place within the State of Illinois and constitutes unfair business practices in violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq. (hereinafter, "CFA").

131.     The CFA applies to the claims of Plaintiffs and all Illinois Class members because the conduct which constitutes violations of the CFA by the Defendant occurred within the State of Illinois.

132.     The CFA prohibits unfair methods of competition and unfair and deceptive acts or practices, including among other things, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, . . . whether any person has in fact been misled, deceived or damaged thereby."

133.     Pella engaged in the concealment, suppression, or omission in violation of the CFA when, in selling and advertising the Windows, Pella knew that there were defects in the Windows which would result in water damage, ensuing other property damage.

134.     Pella engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiffs, Plaintiffs' Builders, Class Members, Class Member's Builders, and/or the general public would rely upon the concealment, suppression, or omission of such material facts and purchase Pella's Windows containing said design defect.

135.     Plaintiffs, Plaintiffs' Builder, Class Members, and/or Class Member's builders would not have purchased the Windows had they known or become informed of the material defects in the Windows.

136.     Pella's concealment, suppression, or omission of material facts as alleged herein constitute unfair, deceptive and fraudulent business practices within the meaning of the CFA.

137.     Pella has acted unfairly and deceptively by misrepresenting the quality of the Windows.

138.     Pella either knew, or should have known, that the Windows were defectively designed and/or manufactured and would allow water intrusion, which would result in severe damages to the structures, such that the structures were not as represented to be as alleged herein.

139.     Upon information and belief, Pella knew that, at the time Windows left Pella's control, the Windows contain the defect described herein resulting in water intrusion and wood rot.  At the time of sale, the Windows contained design and construction defects. The defects reduced the effectiveness and performance of the Windows and rendered the Windows unable to perform the ordinary purposes for which it was used as well as cause the resulting damage described herein.

140.     As a direct and proximate cause of the violation of the CFA, described above, Plaintiffs and members of the Class have been injured in that they have purchased homes or other structures with the defective Windows based on nondisclosure of material facts alleged above.  Had Plaintiffs and Class Members known the defective nature of the Windows used on their structures, they would not have purchased their structures, or would have paid a lower price for their structures.

141.     Pella used unfair methods of competition and unfair or deceptive acts or practices in conducting their businesses. This conduct constitutes fraud within meaning of the CFA. This unlawful conduct is continuing, with no indication that Pella will cease.

142.     As a direct and proximate result of Pella's unfair and deceptive acts and practices, Plaintiffs and the other members of the Class will suffer damages, which include, without limitation, costs to inspect, repair or replace their Windows and other property, in an amount to be determined at trial.

143.     As a result of the acts of consumer fraud described above, Plaintiffs and the Class have suffered ascertainable loss in the form of actual damages that include the purchase price of the products for which Pella is liable to the Plaintiffs and the Class for treble their ascertainable losses, plus attorneys' fees and costs, along with equitable relief prayed for herein in this Complaint.

## COUNT VI
## <u>FRAUDULENT MISREPRESENTATION</u>

144.     Plaintiffs on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

145.     Pella falsely and fraudulently represented to Plaintiffs, the Class members, and/or the consuming public in general that Pella's Windows would be free from defects and fit for their customary and normal use.

146.     Pella falsely represented to purchasers, consumer, and Window owners that the Windows were warranted against defects in material and workmanship when in fact the Limited

Warranty was so limited as to prevent and preclude any warranty protection against the known defect in the Windows.

147.    When said representations were made by Pella, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

148.    These representations were made by Pella with the intent of defrauding and deceiving the Plaintiffs, the Class members and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of the Plaintiffs and the Class members.

149.    At the time the aforesaid representations were made by Pella, Plaintiffs and the Class members were unaware of the falsity of said representations and reasonably believed them to be true.

150.    In reliance upon said representations, the Plaintiffs' and Class members' properties were built using Pella's Windows, which were installed and used on Plaintiffs' and the Class members' properties thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

151.    Pella knew and was aware, or should have been aware, that Pella's Windows were defective and not fit for their customary and normal use.

152.    Pella knew, or should have known, that Pella's Windows had a potential to, could, and would cause severe damage and injury to property owners.

153.    Pella brought its Windows to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs and the Class members.

154.    By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury.

## COUNT VII
### <u>FRAUDULENT CONCEALMENT</u>

155.    Plaintiffs on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

156.    Pella knew or should have known that the Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Pella nor the reasonable expectations of ordinary consumers.

157.    Pella fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Windows are defective.

158.    Pella had exclusive knowledge of the defective nature of the Windows at the time of sale. The defect is latent and not something that Plaintiffs or Class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

159.    Pella had the capacity to, and did, deceive Plaintiffs and Class members into believing that they were purchasing Windows free from defects.

160.    Pella undertook active and ongoing steps to conceal the defect. Plaintiffs are aware of nothing in Pella's advertising, publicity or marketing materials that disclosed the truth about the defect, despite Pella's awareness of the problem.

161.    The facts concealed and/or not disclosed by Pella to Plaintiffs and the Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Windows from their builders.

162.    Pella intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiffs and the Class to act thereon.

163.    Plaintiffs and the Class justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of the Windows.

164.    Plaintiffs and Class members suffered a loss of money in an amount to be proven at trial as a result of Pella's fraudulent concealment and nondisclosure because: (a) they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known; (b) they paid a price premium due to they would be free from defects; and (c) the Windows did not perform as promised. Plaintiffs also would have initiated this suit earlier had the defect been disclosed to them.

165.    By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury.

## COUNT VIII
## UNJUST ENRICHMENT

166.    Plaintiffs on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

167.    Plaintiffs and Class members conferred a benefit on Defendant when they purchased the Windows.

168.    Pella has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Windows, the retention of which under these circumstances is unjust and inequitable because Pella Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Pella nor the reasonable expectations of ordinary

consumers and caused the Plaintiffs and Class members to lose money as a result thereof.

169.    Plaintiffs and Class members suffered a loss of money as a result of Pella's unjust enrichment because: (a) they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known; (b) they paid a price premium due to the fact the Windows would be free from defects; and (c) the Windows did not perform as promised.

170.    Because Pella's retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Pella must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

171.    Plaintiffs and the Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by the Defendant from its deceptive, misleading, and unlawful conduct.

## COUNT IX
## VIOLATION OF MAGNUSON-MOSS ACT

172.    Plaintiffs on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

173.    The Magnuson-Moss Consumer Products Liability Act, 15 U.S.C §2301, et seq. ("MMCPWA" or the "Act") provides a private right of action to purchasers of consumer products against retailers who, *inter alia*, fail to comply with the terms of a written warranty, express warranty and/or implied warranty.  As demonstrated above, Pella has failed to comply with the terms of its warranties, written, express and implied, with regard to the Windows that it advertised, distributed, marketed and/or sold.

174.    Plaintiffs and the members of the Class are "consumers" under the MMCPWA.

175. Pella has been given a reasonable opportunity by Plaintiffs and other Class members to cure such failures to comply and has repeatedly failed to do so.

176. By virtue of the foregoing, Pella and other members of the Class are entitled to an award of damages and other appropriate relief, including attorneys' fees.

## COUNT X
## DECLARATORY RELIEF 28 U.S.C. § 2201

177. Plaintiffs on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

178. Defendant has acted or refused to act on grounds that apply generally to the Declaratory Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2). Plaintiffs seeks a ruling that:

a.  the Windows have a defect which results in a premature failure and premature rotting of wood component of the sash. The rotting of the wood component may not be detectable until after the warranty provided by Pella has expired. The Court finds that this defect is material and requires disclosure for all of these windows;

b.  the Windows have a defect in workmanship and material that allows water to penetrate behind the aluminum clad sash component of the window resulting in premature rotting of the wood component, which rot may progress to adjacent wood components, and that the rotting of the wood component may not be detectable until after the existing warranty provided by Pella has expired. The Court declares that all persons who own structures containing Windows are to be provided the best practicable notice of the defect, which cost shall be borne by Pella;

c.  Certain provisions of Pella's warranty are void as unconscionable;

d.  the 10-year limitation on the warranty is removed;

e.  the limitation of the warranty to the date of manufacture, rather than the date of installation, is removed;

−33−

f.       Pella shall re-audit and reassess all prior warranty claims, including claims previously denied in whole or in part, where the denial was based on warranty or on other grounds, of claims related to wood rot, and pay the full cost of repairs and damages; and

g.      Pella will establish an inspection program and protocol, under Court supervision, to be communicated to class members, which will require Pella to inspect, upon request, a class member's structure to determine whether wood rot is manifest.  Any disputes over coverage shall be adjudicated by a Special Master appointed by the Court and/or agreed to be the parties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for a judgment against Defendant as follows:

a.      For an order certifying the Classes, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiffs as representative of the Classes, and appointing the law firms representing Plaintiffs as Class Counsel;

b.      For compensatory damages sustained by Plaintiffs and the Damages Class;

c.      For equitable and/or injunctive relief for the Declaratory Relief Class;

d.      For payment of costs of suit herein incurred;

e.      For both pre-judgment and post-judgment interest on any amounts awarded;

f.      For punitive damages;

g.      For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

h.      For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs on behalf of themselves and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable.

Dated: June 10, 2014                           Respectfully submitted,


                                               **JOHN SADLER and GERIANN
                                               GATZIOLIS,
                                               Class Representative Plaintiffs**


                                                 /s/ Jeffrey A. Leon
                                               Jeffrey A. Leon
                                               Jeff@complexlitgroup.com
                                               Jamie E. Weiss
                                               Jamie@complexlitgroup.com
                                               **COMPLEX LITIGATION GROUP LLC**
                                               513 Central Ave., Suite 300
                                               Highland Park, Illinois 60035
                                               Phone: (847) 433-4500


                                               Richard J. Burke
                                               Richard@complexlitgroup.com
                                               **COMPLEX LITIGATION GROUP LLC**
                                               1010 Market Street, Suite 1340
                                               St. Louis, MO 63101


                                               Jonathan Shub
                                               Jshub@seegerweiss.com
                                               **SEEGER WEISS LLP**
                                               1515 Market Street, Suite 1380
                                               Philadelphia, PA 19102


                                               James E. Cecchi
                                               **CARELLA, BYRNE, CECCHI, OLSTEIN
                                               BRODY & AGNELLO, P.C.**
                                               5 Becker Farm Road
                                               Roseland, New Jersey 07068


                                               Frank M. Petosa, Esq.
                                               fpetosa@forthepeople.com
                                               **MORGAN & MORGAN, PA**
                                               600 North Pine Island Road, Suite 400
                                               Plantation, FL 33324